APPERSON *versus* COTTRELL.

QUESTIONS IN THIS CASE.

*As to the jurisdiction of the Orphans' Court on the subject of a destroyed will, and the establishment thereof by proof.*

*As to the establishment of such a will, by a copy thereof.*

*As to the number of the attesting witnesses necessary to establish a will.*

1. The Orphans' Court of this State is, in general, possessed of full and entire jurisdiction in relation to all testamentary causes.

2. Thus, before the Orphans' Court, a w ll, lost or destroyed, may be established, on an issue, submitted to a jury, by the production of a copy regularly proved by the attesting witnesses; and may be admitted to probate.

3. So, the Orphans' Court, with the aid of a jury, is competent to receive proof of a will, once made and duly executed before competent witnesses, and which has been destroyed by the testator in a fit of derangement: and (upon proper testimony, under proper issues,) to admit the same to probate.

4. In a case like this, the Supreme Court will only look to the bill of exceptions, and any conceived error, in awarding an issue in the trial of the cause, or in the judgment of the court must be there reserved.

5. Where the copy of a will had been produced for probate, and an affidavit was filed by the executor, stating the circumstances of the destruction of the original paper—held that the affidavit, (no objection to it being made before,) was a sufficient foundation for proof by the subscribing witnesses to the will, that it was executed while the testator was of sound mind; and proof by another that the testator destroyed a paper in a moment of insanity, (on the day of his death,) which he said was his will; were proper matters for the consideration of a jury, by which to identify the paper; and render a verdict on the question of its genuineness as a will.

6. *It seems*, that two, out of three witnesses, attesting a will of realty, *might not* be sufficient to establish said will, (if object-

ed to for want of the third,) if all be alive and within the jurisdiction of the court.

7. But it seems clear that an objection of this kind could not be made, in error, where none had been made below, and where it did not appear, from the record, but that the absence of one of the three witnesses had been accounted for.

In error from the Orphans' Court of Autauga.

This was a proceeding before the Orphans' Court, instituted for the object of establishing the last will and testament of James L. Cottrell. A paper, purporting to be a copy of the will of said Cottrell, was submitted to that Court, for probate, on the affidavit of the defendant in error, the executor. The affidavit stated, that the copy produced, was substantially that of the will; that said deceased had made no other will, save the one produced in copy; and that, at the time of its execution, the testator was of sound and disposing mind : and that it was duly attested in the presence of the witnesses whose signatures appeared thereto attached. That after the time of the execution of the said instrument, the said Cottrel became dissolute in his habits, to such an extent as to impair his mind and destroy his memory ; that while laboring under a fit of drunken insanity, while incapable of acting rationally, he tore into pieces and destroyed the said will; by which doings, he, the executor, was unable to produce the original will for probate; and he prayed the copy might be received and established as the last will and testament of said Cottrell : and letters testamentary issued accordingly. To the admission of this paper to probate, the plaintiff in error, (who had intermarried with one of the daughters of the deceased,) filed objections, because, he averred, the said paper, purporting to be the said will of said Cottrell, was not the last will and testa-

APPERSON VS. COTTRELL.

ment of said Cottrell; that the same had not been executed by the deceased at a time when of sound mind and disposing memory—praying that these matters should be enquired of by the country. And, for further objection, he averred that the said paper was but a copy; and that the deceased Cottrell had revoked the original by destroying it—of which he prayed judgment

The defendant in error, by way of replication, took issue upon the fact of Cottrell having executed his will, admitted the destruction of of it as alleged, but insisted that the testator at the time of the commission of that act, was insane and deprived of reason; further, averred the said paper to be a true copy of the said will, and submitted the matter to be determined by a jury.

The court, upon this state of the proceedings, caused a jury to be empanneled, who, being elected, tried and sworn to try the issues joined, returned a verdict, saying that the said Cottrell died testate; that the instrument produced was a copy of his will; that he was of sound and disposing mind at the time of the execution of said will: and that it had not been revoked. And upon this verdict the Court rendered a decree, or judgment, establishing the will, and issuing letters testamentary thereon.

During the trial a bill of exceptions was taken in the cause, on the part of the plaintiff in error; which disclosed, that when the said cause was progressing, two witnesses, who were the subscribing witnesses to the will, after making proof of the will, testified that the said Cottrell, in his lifetime, in their presence, and that of the other subscribing witness, executed the will in question, and that he was of

sound mind at the time; that, thereupon, another witness was called, who swore that Cottrell, on the morning of his death, in a fit of insanity from intoxication, destroyed a paper which he said was his will. He further testified that he never saw the will, nor had he heard it read. Upon this evidence the copy was admitted to be read to the jury—whereupon Apperson excepted, and brought the case to this court for revision.

Argued by *Goldthwaite,* for the plaintiff in error, and *Hopkins* and *Peck,* for defendant.

SAFFOLD, C. J.—The defendant in error made application to the Orphans' Court, of the County of Autauga, to admit a certain instrument to probate, as the last will and testament of James Cottrell, deceased. His affidavit states, that the instrument annexed, is substantially a copy of a will, made by said James L. Cottrell; that he believes, the decedent made no other will; that he was, at the time of making it, of sound mind; that the will was duly attested: that the testator, after making his will, became dissipated, and his mind was thereby impaired, and destroyed; and, that, at a time when he was in a state of drunken insanity, and incapable of acting reasonably, and not of sound mind, he *tore* the will into pieces, and entirely destroyed the same.—Wherefore, he prays, that the copy may be proved, and admitted to probate, as the last will and testament of the said Cottrell.

The applicant further deposes, that he has made diligent search among the papers of the deceased, and diligent inquiry among the family and friends,

and can *find no other will, and believes no other exists.

The widow of the deceased and next of kin, having been cited, by order of the Court, to appear, and show cause, if any existed, why said instrument should not be proven and established, as the will of the deceased, Apperson, claiming as heir, in right of his wife, who was a daughter of the deceased, appeared, and entered his *caveat* against the admission of said supposed will, to probate, on the ground, that it was not, in fact, the last will and testament of the deceased; and this, he prayed, might be inquired of by the *country.* And, for further objection, he insisted, that the said supposed will was not made at a time, when said James L. Cottrell was of a sound and disposing mind : and, this also, he prayed, might be inquired of, by the country. And, for further reason against granting probate, he alleged, that the instrument presented for probate, was but a copy from the original will of said James L. Cottrell; and, that the original was revoked, by his destroying the same; and this he was ready to *verify:* wherefore, he prayed judgment, &c.

By way of replication, to the several objections, filed against the validity of the will, the applicant denied the facts alleged, in avoidance; re-affirmed those stated in his application and sworn to ; and submitted the several issues, to be inquired of, by the country.

Upon this entire replication, Apperson joined issue.

A jury having then been empanneled, to inquire of the validity of the will, on the issues formed as aforesaid, they returned a verdict, finding, " that James

L. Cottrell did make a will, of which the instrument produced, is, in substance, a copy; and that he was of sound and disposing mind and memory, at the time of making the same; and that it has not been revoked." Thereupon, the Court gave judgment accordingly, establishing the validity of the will, and granting letters testamentary to James L. F. Cottrell, the applicant, who gave bond, and qualied, as executor.

On the trial, as is shewn, by the bill of exceptions, a copy of the will was produced to the court: before the same was read to the jury, two of the subscribing witnesses to the original were introduced, and testified that the original was made by the deceased, in their presence—that he was of sound mind, at the time of his executing the same; and that he executed it in the presence of the other witness.— That, another witness was then called, who testified, that James L. Cottrell, the deceased, did *on the morning of his death*, take the paper, which he said was his will, and destroy it; and, that he believed he was, at the time, in a state of insanity, from intoxication; that he never saw the will of Cottrell, nor did he ever hear it read.

The two witnesses, however, who testified to the execution of the will, proved the same, substantially, before the copy was exhibited to them. Whereupon, the copy was admitted to be read, in evidence— to which the plaintiff in error excepted.

It is now assigned, for error—

First—That the Court below, had no jurisdiction, to grant probate of a lost will, or, of one destroyed in the manner here alleged—or, to submit the same to a jury.

Secondly —That the court should not have permitted the instrument to be read to the jury, without further proof than was offered.

In England, previous to the reign of William I, the County Courts had jurisdiction of testamentary causes; but, after his accession, and the dismemberment of this Court, arising from the separation of the powers of the bishop and the sheriff, by whom it had been held, the probate of testaments, and the consequent determination of questions, growing out of them, devolved upon the Courts of Chancery, the Ecclesiastical Courts, and some Courts Baron. To the two latter, it is said the original jurisdiction exclusively belonged, except, that the former would interpose a concurrent jurisdiction, in determinations upon personal bequests, where a discovery and an account of assets, are generally necessary to the purposes of relief. Also, in cases involving matters of trust.—And, in cases, in which the ecclesiastical courts had not the means of giving effectual relief, the chancery exercised exclusive jurisdiction.[a]

[a] 2 Röp. on Leg. 531.

The general proposition, however, is maintained in the English cases, that the original jurisdiction of probates, belongs exclusively to the ecclesiastical courts, and to those courts Baron, to whom it has belonged, from time immemorial; and, that they alone, are competent to determine the validity of a will, either of real or personal estate.[b]

[b] Ib. 532.—3 Moriv171 —7 Br.P.C 437 [c] 6 Wendel 173

The principle is also recognised, by Chancellor *Walworth*, of New York.[c] He, also, claims, for the decisions of these courts, a degree of respect, equal to that which is due those of any of the others, in Great Britain, of the same date. He insists, that the high

3 v. P.                    8

character of the judges, and the review, to which their decisions are subject, on appeal, by a court of delegates, composed of Judges of the King's Bench, and common pleas, and barons of the exchequer, as well as doctors of the civil law, entitle them to the same weight.

The same, in most respects, may be said of our Court of probate; the jurisdiction of the Orphans' Court to hear and determine this contest, must depend upon the statutes of the State. It is provided, that an Orphans' Court shall be held in each county, "for taking the probate of wills, and granting letters of administration, on the estates of persons deceased," &c.; "with full jurisdiction of all testamentary, and other matters, pertaining to an Orphans' Court, or Court of probate, in their respective counties.ᵃ

ᵃ Aik. Dig. 248 '9.

Again, it is said, "the judges of each County Court, shall have power, within the county, either in open court, or in vacation, to take the probate of wills, grant and repeal letters testamentary, and letters of administration," &c. And, further, that, "in all cases, where it may be necessary to have any matter, depending before said Courts, or the judge thereof, on any return day, tried by a jury, the sheriff, by order of the judge, shall, forthwith, summon and empannel a jury.

From these provisions, it would appear, that the Orphans' Court has, in general, plenary jurisdiction of all testamentary cases; and, that the statutes deny this cognizance to any other tribunal, even to Chancery; except, in peculiar cases, requiring the exercise of its extraordinary powers: such, for instance, as involve matters of trust, and require an account

to be taken ; or, where, for other purposes, a discovery, on oath, from a party in interest is essential to the merits of the controversy.  In cases of this kind, the powers of Chancery would not be restricted, by the jurisdiction of the Orphans' Court, more than by that of any other Court of law, where their interposition is equally necessary.

In the case before us, I perceive no necessity for the extraordinary jurisdiction.  Taking the proof, that a will was once made, and duly executed by the testator, in the presence of competent witnesses, is one of the most common duties of the Orphans' Court.  It is true, that this case required the establishment of the further facts, that the destruction of the original was the effect of insanity, and, that the paper exhibited, was in substance, a copy.  But, if these facts were susceptible of proof, by indifferent witnesses, in a court of law, and the Orphans' Court possessed all the requisite means, to determine the truth of them, the effect of the statutes quoted, must be, to deny the jurisdiction to any other Court.

The facilities of this Court, to try questions of the kind, are greater, than those of a separate Court of Chancery, from which issues of fact must be sent to the Courts of law, for trial.  They are just the same with those of the Chancery, under our organization, which unites the common law and Chancery powers, in the same tribunal, and, which is provided with a jury, for the trial of issues necessary to either.

In addition to the general authority of the Orphans' Court, to cause juries to be empanneled, in all cases, where necessary, as previously referred to, the same statute further provides, "that when the validity of any will shall be contested, or doubts may arise,

as to its validity, or as to any facts, which, in the opinion of the judge, it may be necessary to have ascertained by the verdict of a jury, before awarding any order, judgment or decree, such judge, at any stated session, or on any sitting held in vacation, according to the provisions of this act, may, forthwith, cause a jury to be summoned and empanneled, to try such issues, or inquire of such facts, as, under his direction, shall be submitted to their decision; and shall cause them to be sworn in such form as the case may require.[a]

[a]Ajk. Dig. 251

It is objected, on the part of the plaintiff in error, that this was not a proper case, for the application of this power—that a jury is authorised, only in cases where doubts may arise, as to the validity of the will, &c.; and, here, it does not appear that any doubt was entertained. He, also, contends, that the word " or," preceding "doubts," in the commencement of the section, should be construed, *"and,"* so as to require both the *contest and doubts,* to authorise an issue to the jury.

I own, I cannot perceive the force of these positions. The circumstances of the case appear to have been sufficient to create doubt; especially after the tender of the several issues by the parties, in addition to the affidavit of the applicant for the probate: and, the award of the *venire,* implies an opinion of the necessity for an ascertainment of doubtful facts. I find no cause to suspect any typographical error, or other mistake in the words of the statute; nor do I perceive any objection to it, according to its literal import.

Then, from the language of the statute, a *contest* merely concerning the validity of a will, *or doubts,*

entertained, authorises an issue to the jury. That this was the intention of the act, is, also, clearly indicated in the conclusion of the section, where the jury is required "to try such issues," *or* enquire of such facts, as shall be submitted to them: also, by the direction, that they shall "be sworn, in such form as the case may require." If they had been intended to try issues only, the uniform oath to try the issues submitted, would have been sufficient, and that, alone, we may presume, required.

Another conclusive answer to this objection, is, that the issues were voluntarily tendered and joined, by the parties, after which neither is at liberty to object to this mode of ascertaining the facts.

In reference to facts properly triable on issues, thus submitted, I understand the principle to be conceded, that there is no necessity, for spreading on the record, the evidence adduced on such trials; except, where a bill of exceptions is claimed, as in other cases of jury trials.—Whether conceded, or not, I think the principle sufficiently obvious.

In Chancery, where causes of this kind, as well as other controversies, are prepared for hearing before the Chancellor, the evidence appears, of course, in the form of written depositions. Then it is a matter resting in the sound discretion of the Chancellor to award a feigned issue, to inform the conscience and judgment of the Court of matters of fact involved in doubt and difficulty. The trial by jury is supposed to afford advantages for eliciting the truth in relation to contested facts, superior to any other institution. But the Court alone has power, if it will, even in doubtful cases, to decide for itself, without invoking the aid of a jury;[a] and the verdict, in such

[a] 2 Atkyn's R. 295—2 Vesey's R. 256—Ber'd Ch. R. 100

cases, is not conclusive upon the Court; it is but evidence addressed to its judgment, and if it does not produce conviction, it may be disregarded.[a]

[a]11 Wend. R. 227

The order for an issue may be reversed by the appellate Court, but it is incumbent upon the party seeking such reversal to show, that, upon the evidence as it stood, he was clearly entitled to a decree upon the matter of fact involved in the issue.[b]

[b]Id.

The powers of an Orphans' Court, and of this appellate Court are conceived to be similar, except as to the manner of adducing the evidence, and the form of proceedings.

It was therefore incumbent on this plaintiff in error, if he conceived there was error in awarding the issue, in the trial thereof, or in the judgment of the Court, to have reserved the question by bill of exceptions. Proceeding, as we are left to presume, under this impression, after assenting to the issues and entering upon the trial, he causes points to be reserved; all we may suppose on which, he felt himself aggrieved, in the form of a bill of exceptions; to this therefore, we must look for error, if any.

The exceptions taken disclose the ground of the second assignment of error, that the court permitted the copy of the will to be read to the jury, as evidence, on the proof adduced.

What was that proof? As heretofore shown, it was, that, before reading the copy, two of the subscribing witnesses to the original, swore that the original was executed in their presence; that the testator was of sound mind at the time; that he executed it also in the presence of a third witness; and farther, they proved the *contents of the will, substantially, before the copy was exhibited to them.* That another

witness testified that the deceased, Cottrell, *on the morning of his death*, took a paper, which he said was his will, and destroyed it, (witness knowing nothing more of the contents,) and he believed he was, at the time, in a state of *insanity*, from intoxication. This, it is also to be observed, was after the defendant in error, who was the applicant for the probate, claiming an interest under the will, had in the form of an affidavit, accompanying his application to the Judge, stated all the facts relied on to establish the will, and among others, that he had made diligent search among the papers of the deceased ; also, diligent enquiry among the other members of his family and his friends, could find no other will, and believed no other existed.

No question appears to have been raised as to the necessity of his repeating these declarations before the Court, as a foundation to the secondary proof; nor as to the right of the adverse party to cross examine him, or have other questions propounded. Hence we are to presume that no right of cross-examination was denied, and that the affidavit was supposed to embrace all the requisite facts.

A party to a suit, or other interested person, is competent to make proof of diligent search for, and loss of, a deed, will or other paper, so as to lay a foundation for the introduction of secondary, or inferior proof of its execution and contents; such proof being addressed *solely to the Court*.[a] If the rule admits of any qualification, such as, that, the person offering to make the proof, was the keeper of the papers, trunk, or the like, necessary to be searched, (a restriction applying more properly to public officers,) still, this party was competent, in as much as he was the on-

1 Star. Ev. 349, note 1 and refer's 4 Cowen 483; 6 Wen 178.

ly son, and, after the death of his father, entitled to, at least, as much control as any other person. The extent of the search and enquiry made, and the authority of the party in interest to make it, were, doubtless, sufficient for the object of it, as shown by the last case referred to.

It is also to be observed, that the *non existence* of the will, did not rest alone on the proof by the *party to the Court;* he introduced before *the jury* evidence tending to establish the fact that the original had been *actually destroyed,* and under circumstances which did not affect its validity : that the testator, on the *morning of his death,* in a fit of *insanity,* had torn up a paper which he then said was his will. The declaration as to the identity of the paper is to be considered as *pars res gestæ,* except so far as the insanity could weaken its force. I think, however, there would be nothing extraordinary in the idea that one might be enabled perfectly to know and truly declare the nature of an instrument before him, while his mind was so impaired as to be incapable of either executing or revoking a will. If such was the situation of the testator at the time of destroying the instrument, the language connected with the act might serve to identify the paper.[a] Whether this was the state and condition of the testator at the time—whether he destroyed an instrument, and how far his expressions at the time, should convince the mind repecting its identity, were questions very proper for the consideration of the jury.

The finding these questions in favor of the application for probate, could avail nothing, without the farther finding that the original will was duly executed; also, the contents; for which purpose the evi-

a4Cow 490

dence of the other two witnesses had been introduced. If the evidence satisfied the jury on all these points, and that the contents agreed, substantially, with the copy exhibited, it was their duty to find as they did.

In *Idley* v. *Bowen*,[a] it was ruled that the destruction of a will, even by the hands of the testator, will not amount to a revocation in law, unless he had, at the time, sufficient capacity to understand the nature and effect of the act, and that, although the instrument is not in being, its contents having been satisfactorily shewn, there is no difficulty in establishing it as a will, if it is shown to have been improperly destroyed—(*see, also, Trevelyan* vs. *Trevelyan*.[b]) The principle that an act resulting from insanity can not operate as a revocation of a will duly executed and published, is believed too obvious to require elaborate investigation, I therefore only add the authority of *Williams* on Executors,[c] that, "if a will be wholly or partially cancelled, or destroyed by the testator whilst of unsound mind, probate will be granted of it, as it existed in its integral state, that being ascertained." The same authority, however, maintains, that, in such cases, the proof must be clear and satisfactory.

If the competency of two witnesses, only, to prove the due execution, and contents, of the original will, could be considered as having been sufficiently brought in question to require the opinion of the court; I am not prepared to say that they were sufficient, especially if objected to for want of the third, and his absence unaccounted for. The will embraces real as well as personal estate, and, by statute, three subscribing witnesses are required. They are

3 v. P.                    9

*Marginal notes:* [a]11 Wend. 227  [b]1 Phil. 153  [c]1 vol. 209.

designed to ascertain and judge, with the greatest
certainty, of the testator's capacity to dispose of his
property, as well as that he did so with requisite so-
lemnity.    Whether the heir had not the right to in-
sist on the testimony of all three before probate could
be granted, provided they were all living and within
the jurisdiction of the Court, is a question, which,
when duly presented, may require deliberate consi-
deration.    In the case of *Chase et al.* vs. *Lincoln*,[a]
the principle was so ruled; but it was at the same
time said, if it be impossible to produce any one of
them, the Court would proceed without him *ex ne-
cessitate rei*.    In the case of *Dan* vs. *Bowen*, (previ-
ously cited,) the will, as in this case, appeared from
the testimony of two witnesses, to have been subscrib-
ed by them; and one of them further stated, that it
was also subscribed by a third witness, whose name
he did not recollect, but he had no doubt of his be-
ing a credible witness.    There, as here, the object
being to establish a will, which had been lost or de-
stroyed; the court held that this was all the evidence
that could be expected under the circumstances of
the case, and that it was *prima facie* sufficient.

   In this case, however, it is an important fact, that
no objection appears to have been made below to
the competency of these two witnesses alone, to prove
the will; that the only objection made, or exception
taken, was, that on the testimony of the two subscrib-
ing witnesses, relative to the due execution and
contents of the will, and of the one other witness
concerning the destruction of the original, *the Court
admitted the copy as evidence to the jury*.    It does
not appear but that the absence of the third sub-
scribing witness was accounted for; that any ques-

tion was made, or any opinion of the Court given, respecting the necessity of producing him, in order to the establishment of the will. It is not shewn that any instructions to the jury were given, or requested, whether all the evidence received was sufficient for this purpose; nor does it appear what other evidence, or whether any, was adduced before the jury. Under these circumstances, I am of opinion that no error is shewn in permitting the copy to be read as evidence.

In reference to the argument that there is no sufficient shewing that the testator remained insane, after the destruction of his will until his death, so as to prevent his supplying a new one, had he chosen not to die intestate; and to any other objection respecting the extent of the questions propounded, and answered, it is deemed sufficient to remark, that the issues were sufficient to embrace the entire controversy, and the jury having passed upon it, the legal presumption is, in the absence of any shewing to the contrary, that the evidence justified the verdict; and as to the continued insanity of the testator, if proof to this effect were admitted to have been necessary, the evidence of his having been so *on the day*—"on the morning of his death,"—might justify the inference that it continued until the moment. Or if the contrary presumption could be indulged, a knowledge or recollection of the acts of his insanity, would by no means follow, as a necessary consequence of the restoration of his reason. It is therefore unnecessary to inquire on whom the burthen of proof, in this respect, devolved; or, whether, supposing him to have had the subsequent knowledge, some public recognition of the validity of the insane act, was not

necessary to give it effect. This view of the subject derives additional force from the consideration that these, with other objections were embraced by the issues to the jury, and no question in relation to them has been reserved by the bill of exceptions.

In my opinion, the judgment of the Orphans' Court should be affirmed, and such is the unanimous opinion of the Court.