## McBETH v. McBETH.

1. The orphans' court has the power to establish the contents of a will, which has been destroyed, without the knowledge or consent of the testator, by the proof of a substantial copy of the will.
2. If the will is not destroyed, but is in the possession of any one subject to the jurisdiction of the court, it should compel its production.
3. When a will is in the possession of the deceased, and is not found at his death, the legal presumption is, that he himself destroyed it, *animo revocandi*, until the contrary is shown.
4. The form of the probate of such a will, is, that it is established, until a more authentic copy can be brought in.

Error to the Orphans' Court of Pike.

THE plaintiffs in error petitioned the orphans' court, to admit to probate, a paper which they alledged to be the last will and testament of Walter McBeth. That he being of sound mind, and disposing memory, executed his last will, which was duly attested by the witnesses whose names are signed thereto, but the same has been lost or mislaid, so that they are unable to produce the original will for probate. Annexed is a copy of the alledged will, purporting to be signed by Walter McBeth, and attested by Malcolm Blue, John Blue, and John C. McBeth.

Upon the motion of the petitioner, a citation issued to John McBeth, and others, commanding them to produce to the court, the last will and testament of Walter McBeth, or show cause to the court upon oath, that such is not in their possession, control, or custody. Citations also issued to the next of kin.

The contestants appeared, and objected to probate of the paper, offered as the will of Walter McBeth, and tendered an issue to the petitioner, and 'thereupon a jury was impannelled.

The petitioners then proved the execution of the will as

McBeth v. McBeth.

described in the petition, on the 24th March, 1844, and that the same could not be found amongst the papers of the deceased, or elsewhere since his death. That after the execution of the will, it was put into a pocket book, which was handed to Amanda McBeth, a daughter of the testator, who put it into a trunk, which was in a room occupied by the father and daughter, and which was the usual place of keeping his papers, and that all persons had access to the room. Walter McBeth, the father, was confined to his bed from October, 1844, until his death, in February, 1845.

Belinda McAskill, a witness, stated, that in December, 1844, she saw Amanda McBteh lock the pocket book in the clock. Malcolm and John Blue, two of the witnesses to the will, stated, that subsequent to the execution of the will, they called on the testator for a settlement, who directed his daughter, Amanda, to bring him his pocket book, which she did, and carried back, and deposited it in the presence of the testator.

Flora Blue testified, that some two or three weeks before the death of the testator, she asked him about the disposition of his property, to which he replied, that he had it fixed. He further said, we live in such a queer wolrd, he was afraid they would pick a flaw in it, and in that, or some other conversation with witness, said he thought what Malcolm Blue, had done, would stand, and asked how he would dare to meet his wife, (mother of petitioners,) without complying with her dying charge. Witness did not recollect, whether he then stated what the charge was, but had heard him frequently say, that it was to give the negroes to her children. On cross examination, being asked whether she had heard him say he had made a will, said she did not. It was proved that the original will was written by Malcolm Blue.

Dr. McAlpin, the attending physician, testified, that six days before the death of the testator, he said that he had made a disposition of his property, and was satisfied to die, so far as regarded as his property. That this conversation was in allusion to his will, and that he was physically incompetent to destroy it, after this conversation.

The petitioners offered to prove the declarations of Amanda McBeth, showing her possession of the pocket book, but the

court excluded it as incompetent, and that said Amanda and her guardian had been duly notified to produce the will on the trial. It appears from the copy of the will offered, that Amanda is one of the legatees in the will. John McNeil, guardian of Amanda, came into court, and disclaimed all connection with the present suit, and stated that her interest was the same, whether the will was admitted to probate, or not.

Upon this proof, the court decided that the proof was insufficient to authorize the introduction of secondary evidence of the contents of the will, without further evidence of possession by the adverse party, and thereupon the court refused to permit the will to be proved, and dismissed the petition.

This matter is now assigned as error.

BUFORD, for plaintiff in error.

The orphans' court may establish and grant probate of a lost will, (3 Porter, 51,) and the evidence offered was sufficient proof of its loss. [2 Ala. 60; 13 Johns. 58; 8 Greenl. 417; 14 Wend. 619.]

BELSER, contra.

1. The admissions of Amanda McBeth, as to the custody of the pocket book, were properly rejected; because they did not tend to establish any part of the case. Besides, she had an interest in establishing a paper, to which others were objecting. But, if competent to testify, she should have been examined as a witness. [See Derr v. Allen, 1 Penn. 35; Bank v. McDade, 4 Porter, 253.] And her interest, under the will, could not be released or discharged by the assent of her guardian, whether by parol or otherwise. [See Jackson v. Sears, 10 Johns. 435; 4 Dess. 279.]

2. If a will be found canceled, the law infers a revocation. [See 4 Kent's Com. 531; Colvin v. Fraser, 2 Hagg Eccle. 266; Ibid, 191.] If a testator retains a will in his own custody, and it cannot be found after his death, the presumption is that he destroyed it himself, for to impute the destruction of it, without evidence, to another, without authority, would be presuming a crime. [See 1 Williams on Executors, 77; 4

Kent's Com. 531; Lillie v. Lillie, 3 Hagg Eccl. 184.] A will may be established, though the instrument itself cannot be produced; but this must be done on satisfactory proof that it was duly made and was not revoked by testator. For example, either by proving that the instrument existed *after* the testator's death, or that it was destroyed in his lifetime, without his privity or consent. [See 1 Williams on Executors, 409.]

3. In any view of the case, the testimony was insufficient to establish the probate of the will by secondary evidence. The will conveys real and personal estate. The three, or at least two of the subscribing witnesses to the will, if within the jurisdiction of the court, should have been examined to establish it, before the secondary evidence could be allowed. [4 Dess. 279; Chase v. Lincoln, 3 Mass. 236; Johnson v. Glascock, 2 Ala. 219.] The case in 7th Ala. was determined on a different state of facts. [See Couch, et al. v. Couch, 7 Ala. 519.]

ORMOND, J.—In Apperson v. Cottrell, 3 Porter, 51, the power of the orphans' court, to establish a will which had been destroyed by the testator, in a fit of insanity, was fully recognized. Nor indeed can any doubt be entertained, that the power of that court is fully adequate to establish a will, which has been lost or destroyed, when the will was in force unrevoked by the testator at his death, and that in such a case parol evidence may be given of its contents, and an authentic memorial made thereof in the orphans' court, or the truth of a copy offered as a substitute for the original established. In Trevelyan v. Trevelyan, 1 Phillimore, 149, a will destroyed without the knowledge of the testator, was established. Sir John Nicholl said, there can be no doubt in law, that if a will duly executed is destroyed in the lifetime of the testator without his authority, it may be established upon satisfactory proof being given of its having been so destroyed, and also of its contents.

In Foster v. Foster, 1 Addams, 462, a will had been destroyed by the testator's son. After his death, the fragments were collected, and such portions as were lost, restored from the memory of witnesses; and the court being satisfied that

the copy offered contained the substance of the will, established it.

To justify the court in establishing a will by secondary evidence of its contents, satisfactory proof must be produced of its loss or destruction. If it is in existence, in the possession of any one within the jurisdiction of the court, it should compel its production, to accomplish which our statutes invest the court with plenary powers. [Clay's Digest, 304, § 36.]

In this case, it is fully proved that the deceased executed his will in due form in March, 1844; and in our opinion the evidence also satisfactorily establishes, that during his last illness, and immediately preceding his death, he supposed the will to be in existence, and relied upon it as a testamentary disposition of his property.

The testimony of Flora Blue is full to this point. It is evident that she was an intimate friend of the family, possibly a relation, as we find her inquiring of the testator about the disposition of his property, and it appears he had talked with her on the same subject previously. He then informed her, that he had disposed of his property, in the manner he had promised his wife he would, and that he had reference to this will, is manifest from the expression, that he thought what Malcolm Blue had done would stand, but seems to have had a presentment, that efforts would be made to set it aside, or contest it. It is true, he does not in express terms say he had made his will, but he evidently intended to be so understood, and was so understood. The question, whether he had made a disposition of his property, was in effect asking him if he had made his will, and his answer that he had, conveys as precisely to the mind, the idea that he had made his will, as if he had responded in these words. What else could he mean by saying *he had fixed it;* that he has *afraid they would pick a flaw in it; but he thought what Malcolm Blue had done would stand?* It is impossible to doubt, that he referred to the will written by Mr. Blue.

This was but three weeks before his death; and but six days previous to his death, he tells his attending physician that he was satisfied to die so far as regarded his property, having disposed of it. This had doubtless reference to his

will, and was so understood by the physician. It is then very clear, that at this time he supposed the will to be in existence, and repels the presumption of a voluntary cancellation, or destruction of it, previous to that time; and none can arise during the short period he survived.

In Jackson v. Betts, 9 Cow. 208, it is said, that if a will be once duly executed, and once an existing will, in the hands of the testator, unless there be evidence of its having been canceled or otherwise revoked, the law presumes its continued existence to the time of his death. If this be a sound exposition of the law, it ends this question, as there can be no doubt that the will was executed by the testator, and it would then devolve on those objecting to the probate, to repel the presumption by proving a revocation. But we understand the law to be, that where the will is left in the possession of the deceased, and is not found at his death, the legal presumption is, that he himself destroyed it, *animo revocandi*. [Davis v. Davis, 2 Addams, 223.] The judge adds, "this presumption however, may be repelled by evidence; nor does it require evidence amounting to positive certainty, but only such as reasonably produces moral conviction." This question was again considered very elaborately, in Colvin v. Fraser, 2 Haggard, 266, and the same doctrine asserted.

In this case, it is however to be observed, that the deceased did not have the possession of the will, in the sense in which that term is employed in the cases cited. The rule itself rests on the fact, that no one has access to the will but the deceased. Such was the fact in Davis v. Davis, *supra*, where the will was kept in a trunk, in the room of the deceased; and in Colvin v. Frazer, where it was kept in an iron chest, to which no one had access but the decased, and it also appeared that he was sedulously careful of his important papers, locking his door when papers of importance were about. Here it appears, that when the deceased executed the will, it was deposited in a pocket book, which was kept in a trunk, in a room occupied by his daughter Amanda and himself, but to which as it seems every body had access; and afterwards locked up by the daughter in the clock. This does not then appear to have been such a control over the

76

will by the deceased himself, as to cast on those asserting its continued existence, the necessity of explaining the manner or cause of its disappearance. The obvious effort in the orphans' court, was to charge some person with the fraudulent spoliation of it, and it would seem from the course of the examination, that an attempt was made to cast suspicion on Amanda, the daughter of the testator, who however does not seem to have had any interest in the matter, as it was stated by her guardian that she would receive as much under the will, as if her father was declared intestate.

There is no doubt however, that the will has disappeared, and as we infer from the statement in the record, the pocket book also in which the will was kept; and we think also the necessary inference from the declarations of the testator, a short time before his death, is, that he supposed it was then in existence, consequently did not by any act of his, destroy or revoke it.

It is certainly true, that the declarations of the testator should be received with great caution, as such declarations are frequently made for the purpose of misleading, and of stifling the importunity of relatives and friends. To entitle them to much weight, there ought to be intrinsic evidence of their sincerity, and such we think is the case here. The conversation with Flora Blue, has all the evidences of sincerity, and reality about it, which might be looked for where the object was not merely to parry, or evade a disagreeable subject, or to baffle impertinent curiosity. In such a case, we might expect he would satisfy the inquiry, or evade the subject by general declarations; but here there is that fullness of detail, and reference to persons and events, and also speculations of the probable conduct of those opposed to the will, as gives it all the appearance of reality, and attests its genuineness and sincerity.

The same remarks apply to the testimony of Dr. McAlpin. It does not appear that he has any interest or feeling in the matter. It appears, so far as we can judge from the statement of his testimony, to have been a voluntary statement of the deceased, and it is difficult to assign a reason for his wish to deceive his physician.

It is also to be observed, that no declaration of his could

deceive those about him, as the will was not in his personal custody, but was, as we must infer, where the members of the family had access to it. In the case of Davis v. Davis, *supra*, a lost codicil was established upon declarations certainly not stronger, or more probable than those detailed in this case.

The reason assigned by the court for refusing to permit evidence to be given of the contents of the will, that it was not sufficiently proved tha the original was in the possession of the adverse party, proceeds upon an incorrect view of the power of the court to establish the contents of a will. If it was satisfactorily shown to be in the possession of the adverse party, it would be the duty of the court, as already remarked, to compel its production, and it is not until it is satisfactorily made to appear, that it cannot be produced, that the right exists to prove its contents; and then the form of the probate is, that it is established till the original, or a more authentic copy can be brought in. [Davis v. Davis, *supra*.]

Upon the whole we are satisfied that the testimony establishes that the deceased did make his will as alledged in the petition, that it was not cancelled or revoked by him previous to his death, that it is not in the power of the petitioners to produce the will for probate, and that they should be permitted to prove that the copy propounded by them, is substantially a copy of the last will and testament of the deceased.

Decree reversed and cause remanded.