No. 17,075.

McDONALD ET AL. *v.* McDONALD ET AL.

WILL.—*Action to Set Aside.*—*Parties.*—A legatee, under a will sought to be set aside, need not be made a party defendant in an action by the legatees and devisees under another will which has been lost, in which he was also a legatee, where he elects to join as plaintiff.

SAME.—*Action to Set Aside.*—*Sufficiency of Complaint.*—*Motion to Make More Specific.*—A motion to make more specific a complaint in an action under R. S. 1894, section 2766, to set aside a will for fraud, undue influence, mental incompetency, and because it is a forgery, is properly refused, where the statement of the grounds of contest is in the language of the statute.

SAME.—*Action to Set Aside.*—*Several Statutory Grounds United in One Paragraph.*—*Repugnancy.*—A complaint in an action to set aside a will on the ground of mental unsoundness of the testator, and undue influence, that it was executed under duress and obtained by fraud, and that it was a forgery, may be framed in one paragraph, under R. S. 1894, section 2766, providing for the contest of a will for such reasons, without requiring the grounds to be separately paragraphed.

SAME.—*Who May Be Contestants.*—Devisees or legatees under a lost will may contest the validity of another will attempting to dispose

McDonald *et al. v.* McDonald *et al.*

of the same estate, under R. S. 1894, section 2766, authorizing persons "interested in the estate" to contest the will.

SAME. —*Evidence.* —*Testimony of Contestant.* —A party to a will contest cannot, under R. S. 1894, section 507, testify respecting things which were not open to the observation of all the friends and acquaintances of the testator.

APPELLATE PROCEDURE. — *Evidence.* — *Cross - Examination.* — *Discretion.* —The discretion of the trial court in limiting the extent of a cross-examination will not be interfered with on appeal, in the absence of an abuse thereof.

EVIDENCE. —*Admission of.* —*Estoppel.* —A party cannot complain of the admission of evidence, the substance of which he has elicited by another question.

SAME. —*Statement to the Court of Alleged Privileged Communications.* —*Practice.* —A statement to the court in the absence of the jury, of alleged privileged communications, is not prejudicial error.

SAME. — *Will.* —*Contest.* —*Forgery.* — Contestants of a will, on the ground that it is a forgery, need not specifically show the identical person whose hand perpetrated the forgery.

SAME. —*Expert Witness.* —*Signature.* —An expert witness may give his opinion as to the genuineness of a signature, based upon facts to which he has testified.

SAME. —*Confidential Communications.* —*Attorney and Client.* —*Will.* —Explanatory statements by a widow to an attorney, of the reasons for her husband changing his will, made after he had disposed of certain matters, in which she had sought his professional advice, are not within R. S. 1894, section 505, excluding "confidential communications made to attorneys in the course of their professional business."

SAME. —*Lost Will.* —*Declarations of Testator.* —Declarations of a testator, shortly before his death, as to his manner of disposing of his property, are admissible to show the contents of an alleged lost will, and whether it remained unrevoked at his death, where the existence of such lost will must be proved to establish the right of the contestants of another will to maintain their action.

COURTS. —*Continuance of Sitting After Term Time.* —*Trial.* —A continuance of the sitting of court in an action beyond the term at which it was commenced, is authorized by R. S. 1894, section 1442, where it is impossible to complete it before the expiration of the term.

WITNESS. —*Non-Expert.* —*Disputed Signature of Attesting Witness.* —*Refreshing Memory.* —A non-expert witness who has testified in regard to the disputed signature of an attesting witness to a will, cannot be cross-examined in regard to the signature of such witness

McDonald *et al. v.* McDonald *et al.*

upon a cash book, which he has in his possession, on the ground that he may look at such pages to refresh his memory.

SAME. — *Will.* — *Signature.* — *Manner in which Testator Signed his Name.* —A witness who has testified, from his knowledge of having seen the testator write, that his signature to a will was not genuine, cannot be asked on cross-examination, after having been shown purported signatures of the testator to several checks, whether, from his "present knowledge," the testator wrote his name in a designated manner.

INSTRUCTION TO JURY.—*Refusing.* —*Given in Substance.* —An instruction, accurately stating the law, is properly refused where another instruction substantially similar has been given.

From the Hamilton Circuit Court.

*Fishback & Kappes, A. C. Harris, L. A. Cox, G. Shirts* and *A. J. Beveridge,* for appellants.

*J. M. Cropsey* and *Miller, Winter & Elam,* for appellees.

JORDAN, J.—This action was commenced by the appellees, Malcolm A., Malcolm S., Joseph E. and Jessie C. McDonald, against the appellants, Josephine F. McDonald and Theodore P. Haughey, executors, etc., to set aside what was alleged to be a pretended will of the late Senator Joseph E. McDonald. A trial resulted in the jury finding in favor of the contestants, and over appellants' motion for a new trial the court rendered a judgment setting aside the will in contest. To reverse this judgment appellants prosecute this appeal. Numerous alleged errors of the trial court are assigned, and many questions thereunder are presented by appellants' learned, able, and eminent counsel. Some of these questions are now to be considered for the first time by this court, and the examination of the many authorities cited, *pro* and *con,* in the very ably and elaborately prepared briefs of counsel, has required much labor and time. In our examination of the voluminous

McDonald *et al. v.* McDonald *et al.*

record, we have been subjected to more labor and required to consume more time than would otherwise have been necessary had appellants complied with rule 31 of this court in regard to placing marginal notes upon the transcript. An observance of this rule is essential upon the part of litigants in order to assist the judges and facilitate the business of this court, which is now virtually overwhelmed with cases and labor. A noncompliance with this rule generally results in the court setting aside the submission of the cause at the costs of the appellants. The penalty may be a dismissal of the appeal when deemed proper by the court.

The amended complaint in the case at bar alleges the death of Joseph E. McDonald on June 21st, 1891, and that he left surviving him Malcolm A., as his only living son, and that Joseph E. and Jessie C. are his grandchildren, being the children of one Ezekiel McDonald, deceased, and Josephine F. is alleged to be the surviving widow of the testator, Joseph E. She, as it appears, being his childless second wife. It is then alleged substantially as follows:

That in the year of 1891 a certain paper in writing, purporting to be the last will of Joseph E. McDonald, and purporting to have been signed by him, and attested by Alpheus Snow and Parke Daniels, of date August 20, 1890, was admitted to probate in the Marion Circuit Court, filed and recorded therein, and that letters testamentary were issued to appellant Haughey, who was named in said will as the executor thereof; that in said pretended will certain described real estate in Marion county, Indiana, known as "the Washington street" property, of which said Joseph E. died the owner, was purported to be devised to Josephine F. McDonald, who accepted the provisions of the will, and that she asserts and maintains that the same is the

true and only last will of her husband, Joseph E. The complaint then charges that said pretended will is invalid, and is not the last will of said McDonald, for the following reasons:

"Said pretended will was unduly executed.

"Said pretended will was obtained by the undue influence of said Josephine F. McDonald, the defendant herein.

"Said pretended will was procured by fraud.

"Said pretended will was not executed by said Joseph E. McDonald, · and the pretended signature of said Joseph E. thereto was not made by him or by any one in his presence, with his consent.

· "Said pretended will was not attested and subscribed in the presence of said Joseph E. McDonald, by said Alpheus H. Snow and Parke Daniels, or either of them, as witnesses thereto, and the pretended signatures of said Snow and Daniels thereto, as the attesting witnesses thereof, were not subscribed by them, or either of them, or by any one for them at their procurement, or with their knowledge or consent, and are not the act and deed of them, or either of them.

"That said pretended will was unduly executed, and was not executed by the said Joseph E. McDonald, deceased, for that, at or about the time said pretended will bears date, said Joseph E. McDonald executed in writing his true and genuine last will and testament, which was attested and subscribed in his presence by two competent witnesses, and which was, and is, in substance and to the effect as follows:

"(a) A direction for the payment of his debts.

"(b) A devise unto Josephine F. McDonald for her life of the real estate hereinbefore described.

"(c) And to said Josephine F. McDonald all his per-

sonal property at his homestead at the time of his decease.

"(d) To the plaintiffs, Malcolm A. McDonald, Joseph E. McDonald. and Jessie C. McDonald, heirs at law of the said Joseph E. McDonald, the fee simple of the real estate above described, together with all other real and personal property of the said Joseph E. McDonald which he might have at his death, not specifically bequeathed to the said Josephine F. McDonald.

"(e) To the plaintiff, Malcolm S. McDonald, the gold watch which the said Joseph E. McDonald might have at the time of his decease, and also the law library of the said Joseph E. McDonald, if the said Malcolm should choose the profession of the law.

"And that said will and testament remained and was at the death of said Joseph E. McDonald, his true and only last will and testament.

"And thereafter, without the knowledge or consent of the said Joseph E. McDonald, or of the plaintiffs, or either of them, the said true and genuine last will and testament was removed, lost, or stolen by, or at the procurement of such person or persons concealed, suppressed, or destroyed, without the knowledge or consent of the said Joseph E. McDonald, or of the plaintiffs, or either of them, and the pretended will of the said Joseph E. McDonald as it has been admitted to probate in said court, was thereupon, by or at the procurement of such unknown person or persons, substituted or foisted in the room and place of the true and genuine last will and testament of the said Joseph E. McDonald.

"All of which was done without the knowledge or consent of the said Joseph E. McDonald, or of the plaintiffs, or either of them.

"And neither the said Joseph E. McDonald, nor either or any of the plaintiffs, at any time thereafter, during

the lifetime of said Joseph E., had any knowledge, or consented to such removal in any way, or concealment, suppression, or destruction of the said true and genuine last will and testament of the said Joseph E. McDonald, or of the substitution therefor, of said pretended will, as it has been admitted to probate.

"And the plaintiffs aver that they have made diligent search and inquiry to discover the said true and genuine last will and testament, so concealed, suppressed, or destroyed, but have hitherto been unable to discover the same, or to obtain any information, where, or in whose possession, control or custody the same is, and they do not know any person or persons, whom they, or either of them, can suppose to have possession, power, or control of said true and genuine last will and testament of the said Joseph E. McDonald, or against whom they, or either of them, can justifiably invoke any process of this court looking to the possible production of such true last will and testament to this court.

"Wherefore the plaintiffs pray the court that said pretended will be declared void, and that the probate thereof be set aside."

We will consider the various points and contentions of appellants in the order in which the same have been presented in their brief. It is contended that the court erred in not sustaining the motion of the appellant, Mrs. McDonald, to compel the plaintiffs to elect whether they would prosecute their action upon the theory that the will in contest was a forgery, or upon the theory that the execution thereof, by the testator, was obtained by undue influence, and also in overruling a motion to make the complaint more specific.

It is a well-settled legal proposition that a cause must be put to trial upon a definite theory, and that such theory must be outlined by the pleadings and sustained

by the law applicable to the case.   The contention of counsel for appellants is that the appellees in their complaint assume inconsistent positions.   After setting forth the grounds of contests as mentioned in the complaint, they say "it must be apparent that if the will was procured by undue influence, it could not have been a forgery, and *vice versa* if a forgery it could not have been procured by undue influence."

Numerous authorities on the code practice in other States are cited to show that inconsistencies are not permitted in a single pleading or paragraph, and counsel then propound the question, "Does a complaint under the will statute have any exception in this respect to the general rule?"   Section 2596, R. S. 1881 (section 2766, R. S. 1894), of an act concerning wills   is as follows :

"Any person may contest the validity of any will, or resist the probate thereof, at any time within three years after the same has been offered for probate, by filing in the circuit court of the county where the testator died, or where any part of his estate is, his allegation, in writing, verified by his affidavit, setting forth the unsoundness of mind of the testator, the undue execution of the will, that the same was executed under duress or was obtained by fraud, or any other valid objection to its validity or the probate thereof; and the executor and all other  persons beneficially interested therein shall be made defendants thereto."

It is true that under the civil code different causes of action must be stated in separate paragraphs.   But an action to contest the validity of a will is a special statutory proceeding.

Under the section above quoted, the contesting party is requied to file in the circuit court his *allegation in writing*, verified by his affidavit, setting forth the par-

ticular grounds of contest as mentioned in the statute, *or any other valid objection to its validity.* This section, we think, evidently authorizes the *"allegation in writing"* to consist of a complaint in one paragraph, if the pleader so desires, in which the will may be assailed upon any and all grounds that will expose its invalidity. The contest of a will, being a special proceeding under the statute, we must look to section 2596, *supra*, in order to ascertain the character of the complaint required, and not to the provisions of the general code. *Summers* v. *Copeland*, 125 Ind. 466. We recognize nothing in this section of the law which either expressly, or by implication, prohibits inconsistency, repugnancy or duplicity, or which requires that the several grounds of contest shall be stated in separate paragraphs. The cause of action contemplated by the section is the resisting of the probate, or setting aside the will for certain specified reasons, and, in addition to these, for *"any other valid objections."* The complainant may charge, or allege, any one or more valid objections to the will as the grounds of his action, without regard to consistency or repugnancy, and upon the trial he may introduce evidence to sustain any one or more of the alleged grounds, and the court is not authorized to compel him to elect as to which he will seek to sustain.

It has been the practice in this State for years, in these actions, to join in a complaint, in one paragraph (if the plaintiff so desires), different grounds of contest, and, we think, it must be considered as settled that the plaintiff in such joinder is not confined to those grounds only which are consistent and not repugnant. *Kenworthy* v. *Williams*, 5 Ind. 375 ; *Etter* v. *Armstrong*, 46 Ind. 197 ; *Bowman* v. *Phillips*, 47 Ind. 341.

While it is true that in actions under our code a party who states his cause of action or defense in different

forms must generally paragraph each cause, but he is not prohibited from joining in his complaint, in separate paragraphs, inconsistent causes of action or defense. *Snyder* v. *Snyder,* 25 Ind. 399, and cases cited. The provision of the statute which requires that a complaint to contest a will shall be verified does not necessarily imply that the grounds of contest shall be consistent.

An answer of *non est factum* under the code is required to be verified. Yet it is a common and unquestioned practice to join with such answer paragraphs confessing the execution of the instrument in suit, but seeking to avoid the action by alleging payment, or no consideration, etc. We are of the opinion that the ruling of the trial court in denying the application of appellant to require appellees to elect whether the case should be tried upon the theory of undue influence or forgery, made before and during the trial, was correct.

There was no error in overruling the motion to make the complaint more specific, for the reason that the statement of the grounds of contest in the language of the statute is sufficient. *Reed* v. *Watson,* 27 Ind. 443; *Bowman* v. *Phillips, supra.*

There was no error in the action of the court in overruling the demurrer to the complaint upon the grounds of insufficiency of facts and defect of parties. All of the contesting parties appear from the statements in the complaint to be devisees named in the alleged genuine will of the deceased testator, which will, as it is averred in the pleading, had been removed, lost or stolen, and the alleged spurious one in suit substituted in its place and stead. All of the complaining parties, except Malcolm S. McDonald, also appear to be the heirs at law of Joseph E. McDonald, deceased. The contention of appellants, in substance and effect, is that the theory of the complaint is twofold: That the appellees, both by

McDonald *et al.* v. McDonald *et al.*

their complaint and by the actions and statements of
their counsel during the trial, sought to assail the in-
validity of the will which had been admitted to probate;
and also to establish the one said to have been lost or
destroyed. The learned counsel for appellees insist and
claim that the theory of the complaint is, and the only
relief sought to be obtained thereby, was a decree of the
court setting aside and annulling the will in contest;
that the appellees sued, not as heirs, but as devisees or
legatees of the destroyed will, under which they asserted
their interest in the estate of the testator, and their
legal right to contest the one said to have been forged;
that in order to support the character in which they
sued, it was necessary to refer to the one lost, or de-
stroyed, and show that there was a true and genuine
last will, by the provisions of which they were all inter-
ested in the estate.

But appellants further contend that if the amended
complaint is construed only as going to set aside the
probated will, then it must follow that there is a defect
of parties for the reason that Malcolm S., being a lega-
tee under the probated will, should have been made a
party defendant, as required by the section of the stat-
ute herein cited. While it may be admitted that the
complaint is not a model pleading in all respects, never-
theless we are of the opinion that, as outlined by the
facts therein averred and stated, its evident purpose or
theory is, and the only relief sought was, the setting
aside of the probated will. It was a part of appellees'
case, and one of the grounds upon which the contest
was waged, and the one, as it appears from the special
findings upon which the jury based their general verdict,
that no such will as the one assailed ever existed as a
genuine will. It is also apparent, we think, that ap-
pellees did not seek to maintain the action as the heirs

of Joseph E. McDonald, deceased. It is not shown in the complaint that Malcolm S. is an heir of the deceased, but it shows that he, as well as all of the other co-complainants, are devisees and beneficiaries under the lost, but true and only will, in the place of which the spurious one, as averred, had been substituted. Under section 2596, *supra*, the contestants of a will must be persons interested in the estate. *Niederhaus* v. *Heldt*, 27 Ind. 480; *Schmidt* v. *Bomersbach*, 64 Ind. 53; *Kinnaman* v. *Kinnaman*, 71 Ind. 417.

In the case of *Schmidt* v. *Bomersbach*, *supra*, on page 55 of the opinion, this court said:

"The complaint must show the plaintiff to have an interest of some kind in the subject-matter involved in the contest."

We think it is an evident legal proposition, under the section referred to, that any or all persons who are devisees or legatees under the lost and only will of a deceased testator have such an interest as will authorize them to contest the validity of another will, upon proper grounds, whereby the same estate is in whole or in part affected by the one under which the claim is sought or attempted to be distributed. Malcolm S., being interested as a devisee or legatee in the supposed lost but genuine will, together with his co-plaintiffs, had a legal right, together with them, to join in the action, and, having properly elected to join as plaintiff, it was not necessary to make him a defendant. It follows, therefore, that there was no defect of parties, and there was no error in overruling the demurrer on that ground. The fact that the will under which the appellees asserted their right to contest the one alleged to be invalid, was lost or destroyed without their knowledge or consent, and without the act, agency or authority of the testator, did not destroy their rights thereunder.

It is not necessary for us in this case to decide as to the right of plaintiffs to have joined in their complaint a cause of action to establish and have admitted to probate the lost will, upon which they relied, or to consider the conflict, if any, existing between the decisions of *Summers* v. *Copeland, supra,* and *Roberts* v. *Abbott,* 127 Ind. 83.

The appellees, having based their right to maintain this action for the reason that they were interested in the estate by reason of the provisions of the lost or destroyed will, were, among other things in order to prevail upon the trial, required to establish that right.

Counsel for appellees insist that the questions presented by appellants under their assignment of error, that the court erred in overruling their motion for a new trial are not in the record, and therefore cannot be considered. It appears from the record that the trial of the cause was begun during the November term, 1892, of the Hamilton Circuit Court, and was continued from day to day until Saturday, February 4, 1893, which was the last day of that term. The trial still being in progress on that day, and it not being possible to complete it before the expiration of the term, upon appellees' motion, adjourned the further hearing of the cause until Monday, February 6, 1893, and from day to day until completed. February 6 was the day fixed by statute for the commencement of the next term of the Hamilton Circuit Court. The verdict of the jury was returned on the 17th day of that month, and the motion for a new trial was filed on the 13th of March next following. Under the circumstances a continuance of the sitting of the court in the cause beyond the November term was fully authorized by section 284, Ell. Supp., section 1442, R. S. (Burns) 1894.

On the trial of this cause appellees introduced one

Jesse Caldwell, as a witness, who testified, from his knowledge of having seen Senator McDonald write, that his signature to the will in question was not genuine. Two points are raised by appellants relative to this witness:

First—That the witness was not permitted by the court to answer the following questions propounded to him upon cross-examination:

"Quest. Now, from your *present knowledge* of the signatures of Senator McDonald, tell the jury * * * whether in your judgment Senator McDonold always wrote the letters 'on' and then lifted the pen before making these (the) letters 'al,' and then lifted the pen and then made the final letter 'd?'"

Second—That he was not permitted to answer the following put to him upon cross-examination:

"Quest. Look at this letter (referring to application for a marriage license), which you mentioned in cross-examination, and tell us whether if in making his name he did not make the 'e' one way and in the signature make it different?"

The first question seems to have been propounded by appellants' counsel to show that the witness was mistaken in a statement drawn out of him upon cross-examination, to the effect that it was a peculiarity of the testator's signatures, as they had come under his observation, that the word "McDonald" was not connected all the way through.

It does not appear that the witness had testified to this effect in chief. Preceding this first question, counsel for appellants exhibited to this witness, upon the stand, some fifteen checks, and a promissory note, purporting to have been signed by the testator, and over the objections and exceptions of the appellees the witness was asked if the signatures to the checks and note

were genuine, and he answered that he thought they were. Following this answer the witness was asked the question first excluded. We think, it is apparent from the fact that these checks were exhibited to the witness, and also, from the form of the interrogation, the words *"now from your present knowledge"* being used, that the answer to the question involved the taking into consideration by the witness the checks and note exhibited to him upon the stand. That it was intended that the sig-. natures to these checks should be considered by the witness in his response, more fully appears from a further question immediately asked him by counsel to the same effect. Whereupon he asked if he was to leave the checks out of the controversy, to which inquiry counsel for appellants made no direct response, but said: *"Speaking from your personal knowledge from what you know now."* This witness was not an expert in handwriting, and it does not appear that he had seen the testator sign the checks and note. These were not papers in the case introduced for any other purpose, nor were the signatures thereto admitted by appellees to be genuine. The rule is firmly settled in this State that on a question involving handwriting, the only papers that may be used in examinations, of even an expert witness, are those which may have been brought into the case for another purpose. Other papers not pertinent to the case cannot be shown to the witness and used upon examination, unless the genuineness of the same is admitted by the party against whom the evidence is sought to be elicited. This rule is supported by the following authorities : *Chance* v. *Indianapolis, etc., Gravel Road Co.,* 32 Ind. 472; *Burdick* v. *Hunt,* 43 Ind. 381; *Huston* v. *Schindler,* 46 Ind. 38; *Jones* v. *State,* 60 Ind. 241; *Forgey* v. *First Nat'l Bank,* 66 Ind. 123; *Hazzard* v. *Vickery,* 78 Ind. 64; *Shorb* v. *Kinzie,* 80

Ind. 500; *Shorb* v. *Kinzie*, 100 Ind. 429; *Walker, Admr.*, v. *Steele*, 121 Ind. 436; *White Sewing Machine Co.* v. *Gordon*, 124 Ind. 495; *Doe Ex. Dem. Perry* v. *Newton*, 5 Ad. & El. 514 (31 Eng. Com. L. 712); *Van Wick* v. *McIntosh*, 14 N. Y. 439; *Bank, etc.*, v. *Mudgett*, 44 N. Y. 514; *Miles* v. *Loomis*, 75 N. Y. 288; *Hynes* v. *McDermott*, 82 N. Y. 41; *Pierce* v. *Northey*, 14 Wis. 10.

The rule seems to be a reasonable one, and the ground or reason upon which it is founded is that its requirements are necessary in order to avoid the evil of having collateral issues injected into the case, and the minds of the jurors distracted thereby. If the papers or documents are not in evidence, or connected with the cause for some other purpose, and their genuineness is not admitted by the adverse party, then independent proof would be necessary upon the side of the party seeking to use them as a standard of comparison, to establish their authenticity. This evidence, the opposite party would be entitled to rebut, and thereby the parties would become involved in a collateral issue. This, the rule seeks to avoid. But counsel for appellants contend that there was no attempt upon their part to infringe upon this rule. It is said that there was no attempt to lay these papers before the jury. The force and effect of their contentions seem to be that they had the right to exhibit the checks to the witness, in order to test the accuracy of his statement as to how Senator McDonald wrote his name. Or in other words, that these papers having been shown to the witness, he ought to have been permitted to state what his present opinion was, after having seen them, as to whether "onald" in the testator's name was never written without a break. This rule must have the same application, and for the same reason, when a paper is shown to a witness for the purpose of

testing his accuracy. If a disputed paper could be used for the purpose of testing the correctness of the opinion of the witness, a collateral inquiry would necessarily arise. *Bacon* v. *Williams*, 13 Gray 525.

The witness, from the fact that he had seen Mr. McDonald write his name seemed to have had an impression in his mind therefrom, as to the characteristics of his signatures. Then upon cross-examination it is drawn out by appellants that as the witness remembered, there would be breaks in the word McDonald, and the checks and note were then shown him and the question asked. We think it must be apparent that the purpose of this inquiry was to have the witness to compare the exemplary in his mind, formed by his acquaintance with the signature of the testator, with the new exemplary obtained or formed by the inspection of the checks and note. If this could be held admissible, then it must be evident that the rule referred to forbidding papers not admitted to be genuine to be used as a standard of comparison would be abrogated, and the evil which it was intended to prevent would necessarily follow. For if the witness had stated that the signatures to the checks and note were not genuine, then if appellants were entitled to use them for the purpose as insisted, surely they would have been entitled to contradict him by other evidence. And likewise if he stated they were true signatures, to the appellees must be conceded the right to show the contrary, and hence at once the collateral inquiry would have arisen. There was no error in excluding this question. If there was any error it was in permitting, over the objection of appellees, the witness to state that signatures to the checks and note were genuine. This witness testified in chief, that at one time he saw the testator subscribe his name to a certain request for a marriage license to be issued, which paper,

he incidentally stated, he had in his possession. No evidence based upon this written request appears from the record to have been brought out by appellees.   The second question seems to have been founded upon the alleged right of appellants to cross-examine the witness as to the difference of the letter ''E.,'' in this request, and the one in the signature to the will.   We do not think that the appellants are in a position to be heard on their complaint, on this question, for the reason that the record shows that this second question was answered by the witness as follows :   ''I don't know, it is different. I cannot answer that,'' and this answer seems to have been permitted to remain in evidence.

Appellants seem to have had the benefit of all the knowledge that the witness possessed on that particular point, and for this reason alone, if for no other, we cannot adjudge that the court erred in not permitting counsel to further interrogate him relative to the capital ''E.'' in the paper in question.

It is a settled rule of practice that the extent to which a cross-examination may be conducted is largely within the discretion of the trial court, and such discretion will not be interfered with by this court, unless it clearly appears, by the record, that it has been abused to the injury of the complaining party.   *White Sewing Mach. Co.* v. *Gordon, supra.*   Maurice Butler, not an expert witness, testified in behalf of appellees relative to the disputed signature of the attesting witness, Parke Daniels. On cross-examination he was shown some pages said to be from a cash book of McDonald and Butler, upon which the signature of Daniels appeared.   These pages had not been referred to by the witness in his examination in chief.   He was then asked to state whether the capital ''D,'' as it appeared in these pages, was not above the line, almost as the ''D'' in the signature to

the will.   This question was excluded.   These pages of
the cash book were not properly papers in the case for
any purpose.   The authenticity of Daniels' signature
therein was not admitted, and the use of them was pro-
hibited by the rule heretofore considered.   Counsel for
appellant argue that as these pages of the book were in
the possession of the witness, he had the right to look at
them for the purpose of refreshing his memory, under
the rule laid down in *Thomas* v. *State,* 103 Ind. 419,
and *White Sewing Mach. Co.* v. *Gordon, supra.*

But we fail to see the application of this rule to the
question raised, and it is not made apparent by the rec-
ord nor by appellants' brief.   Some criticism is urged
by appellants to the ruling relative to the witness, Henry
L. Tolman, but as no evidence appears from the record
to have been given by this witness under such ruling,
the error, if any, must be deemed to have been harmless.
There was no error in the action of the court in not per-
mitting the witness Hurty, who seems to have examined
a large number of checks signed by the testator, to state
in how many of them the word "onald" was connected,
and in how many divided, for the reason that appellants
substantially elicited the same evidence or explanation
from the witness by another question, but in a different
form.

Appellants next complain and insist that the court
erred in hearing apart from, and out of the presence of,
the jury certain communications made to John M. But-
ler, an attorney at law, by the appellant, Mrs. McDon-
ald, which, she claimed, were privileged, upon the
grounds that they were confidential, being made by her
to him as her attorney.   Butler, who was introduced as
a witness by appellees to testify to these communica-
tions of Mrs. McDonald, disclaimed that the relation of
attorney and client existed between him and said appel-

lant.    This, however, was a matter proper for the court
to determine, we think, from the facts, after hearing
them, beyond the jury.    *Bacon* v. *Frisbie,* 80 N. Y.
394.    However, if we are not correct in this statement
of practice, still, if the action of the trial court was er-
roneous in this respect, it is not available to appellants,
for the reason that it does not appear that any privileged
communications made by Mrs. McDonald and detailed
by Butler to the court, were given in evidence to the
jury.    If what he detailed to the court was not heard
by the jury, we fail to see how appellant was prejudiced
thereby in the trial of this cause.    Certain statements
made by Mrs. McDonald shortly after the death of her
husband, at her home in Indianapolis, to the witness,
John M. Butler, were by the court permitted to be given
in evidence by him, in behalf of appellees, and this rul-
ing of the trial court, in admitting the same, is assailed
by appellants, for the alleged reason that these state-
ments were privileged, under the rule that forbids the
disclosure of communications made by a client to his or
her attorney, in the course of their professional relations.
Section 497, R. S. 1881, and section 505, R. S. 1894, ex-
cludes "confidential communications made to attorneys
in the course of their professional business, and as to
advice given in such cases."    This witness, as we here-
tofore said, disclaimed that at the time the communica-
tions were made he was acting in the capacity of an at-
torney for appellant, and stated that he was not con-
sulted professionally by her, but that he was advising
her only as a friend.    As hereinbefore said, this relation
must be determined by the court from all the facts ap-
pearing, and not alone from the disavowal of the at-
torney.

It appears that the witness, Mr. Butler, was an emi-
nent lawyer, and engaged at the time in active practice

of his profession. The deceased, Senator McDonald, had been his partner in the practice of the law, for many years, up to the date of his death. On June 29, 1891, a few days after the death of the testator, Mrs. McDonald wrote and sent to Mr. Butler at his law office in Indianapolis, the following note :

"MR. JOHN M. BUTLER.

DEAR SIR:—Mr. Snow kindly suggested your calling should I wish to consult with you. There are many things in which I need your good advice, and would be pleased to see you Wednesday evening after business hours if convenient. Yours truly,

MRS. JOSEPH E. McDONALD."

In response to this request, Butler called at the home of Mrs. McDonald. After he was seated, the conversation appears to have been commenced by her saying to him : "Mr. McDonald has always told me that if in any emergency or condition I desired the advice of a friend on whom I could rely absolutely, to send for you." Butler stated that there was nothing said by her about desiring to consult him professionally, or with reference to any legal questions. That she was merely asking advice of him as a friend. "Nothing," said the witness, "as to her rights was talked about." The first item of the conversation at the house after telling Butler that her husband had recommended her to confer with him as a friend, was in regard to some awnings at the windows that had been put up by a young man, with whom she had contracted during the life of her husband. These awnings had not all been placed during the life of her husband, for the reason that the noise annoyed him while in his sick condition. After his death it appears she wanted the awnings that were up taken down; this the party declined to do. It was

finally agreed that he should complete the placing of
the awnings at the exact cost for so doing, and that
after doing the work he had presented to her a bill for
his services, which she thought was too large. That
when she informed this man that his bill was not cor-
rect, he got angry and made some saucy remarks in re-
sponse. After detailing this, she then said to Butler
"What am I to do." To this he replied, "do nothing.
Mr. Beveridge is Mr. Haughey's (the executor) attorney
and when these people present any bill all you want to
do is to turn them over to Beveridge and Haughey."
That ended the conversation in regard to the awnings.
The next matter to which the conversation turned was
relative to Mrs. McDonald's income. She spoke about
having been making some figures about her income, and
how much it would be. Butler also made some estima-
tion relative thereto, and she inquired of him if he
deemed it sufficient to afford her a living if she con-
tinued to live at the house where she then resided, and
Butler told her that it would. Some other matters re-
lating to debts, and money which the witness had sent
her arising out of the settlement he had made of the
partnership affairs of the law firm of McDonald and
Butler were talked about. After the conversation about
the income and settlement had ended, it appears to
have been turned by Mrs. McDonald to another subject.
This conversation was detailed by the witness as fol-
lows, and was permitted over the objections of appel-
lants to go to the jury as evidence in the case in behalf
of the appellees.

Turning her head to me, said the witness, Mrs. Mc-
Donald said :

"Now, Mr. Butler, you cannot blame me about the
will." I said, "Mrs. McDonald, I am not blaming any-
body about the will." "Well," she said, "you ex-

pressed astonishment at the will when it was read by
you down at the office, now," she says, "you cannot
blame me about it ; I have done nothing more than any
wife has a right to do ; I have gotten all from my hus-
band I could for my support." I said again " I am not
blaming anybody about the will, but there is just one
thing that worries me." She says, "What is it?" I said,
" in all our long continued friendship and years of close
intimacy Mr. McDonald never made a statement to me
of a fact in his life that did not turn out just exactly as
he said it would except this one, now," I said, "how do
you account for it that he told me his will was one
thing and it turns out to be another thing ?" She said,
"I can explain that;" she said, "he did have such a
will as he told you about, but I did not like it and I got
him to change it." Well, I did not say anything much
to that, but after thinking a moment I said, "It would
have been substantially the same so far as the income to
you is concerned if it had been as he told me, because
you would have had the whole income from it all your
life, the only difference would have been you could not
will it away or sell the Washington street property."
Then she says, "It was putting a price on my head and
I did not like it, and I got him to change it, and I ex-
pect that in his weak state of mind and body his mind
reverted to the will he had formerly made and for the
time being forgot the will as it now is." I did not say
anything more than that ; I think that pretty much
ended the conversation ; I think the next thing that was
talked about she was asking me when I would go away
on my vacation, etc.

Counsel for appellants strenuously insist that there
was error in allowing these statements as to the will to
be detailed as evidence by Butler to the jury, under the
rule laid down by section 497, *supra,* as construed by

judicial decisions.   Many authorities are cited upon this proposition, but we do not consider it necessary to extend this opinion in a review of these.   We fully recognize the importance and the necessity for the strict enforcement of this salutary rule which forbids an attorney at law to disclose communications confided to him in the course of his professional business, or as to advice given in such a case.   We also recognize that it is well settled by the decisions of this court, and many others, that this rule is not to be extended to such communications which come to the knowledge of an attorney when the relation of counsel and client does not exist.   To come under the protection of the rule, in question, the communications claimed to be privileged must be addressed to an attorney in his professional character of a legal adviser, with a view to legal advice which as an attorney it was his duty to give.   *Borum* v. *Fouts*, 15 Ind. 50 ; *Hanlon* v. *Doherty*, 109 Ind. 37 ; 1 Greenl. Ev., section 244.

It does not clearly appear that any part of the conversation between Butler and the appellant, at her house, came within this rule.   However, passing this question without deciding, we are of the opinion that the statements of Mrs. McDonald testified to by the witness in regard to the will were not privileged and were properly admitted.   These were independent of, and had no connection whatever with, nor reference to, what had been previously said or talked about by the parties.   That conversation seems to have ended before she introduced the other in reference to the will.   It is obvious, we think, that they were not made to him as an attorney in the course of his professional business, neither did they have any reference to, or connection with, advice given  or sought from Butler as an attorney.   After having disposed of all matters in which she probably might have. sought his professional advice, she seeks to

explain to him how it was that her husband had changed his will, and executed one whose provisions were somewhat different from those stated by the testator to Butler. The latter as an acquaintance and friend of the husband had expressed surprise that the will of the latter found after his death did not correspond with the one that the deceased had referred to shortly before his death, and these explanatory statements seem to have been made to satisfy Butler on this question, and for no other apparent purpose. The rule laid down in the case of *Maas* v. *Bloch,* 7 Ind. 202, cannot be extended to the question herein involved. The facts in that case and the one at bar are different and distinguishable. An attempt was there made to separate from one entire communication, a part of which was admitted to be privileged, certain statements upon the ground that the person making such, which were all made at the same time and in the same conversation, made part thereof in the character of an agent, and part as a witness, having personal knowledge of the facts so stated. This court held that under the facts therein, it was not practicable to make the separation, as it could not determine, or distinguish which part was uttered as an agent, and which as a mere witness. No such difficulty arises in the question now under consideration. The statements made by Mrs. McDonald, at the house, in regard to the will appear to be as separate and distinct from what was previously said, as though they had been uttered at different times, and places.

Appellants complain of the ruling of the court in admitting in evidence certain statements or declarations of the testator made to John M. Butler, shortly before the death of the former, relative to the contents of his will, and also in refusing to give instruction number ten asked by them, and in giving, on its own motion, instruction number eight. The will in contest bears

McDonald *et al. v.* McDonald *et al.*

date of August 26, 1890. It appears to have been conceded by both parties in this action, that a will was duly executed at his, the testator's, law office at Indianapolis, on that day, which was attested by two witnesses, Snow and Daniels, but at this point the lines of concession seem to diverge. The contention of the appellees seems to be that the will executed on that day was the one that had been lost or stolen, and that the will in contest was a false one substituted in the place of that which had been lost, and appellees further claimed that they were each interested as devisees in the lost or stolen will. This, under the pleadings, and at the trial, was denied by appellants, and they contended that the probated will was the genuine will executed on the date mentioned.

The only essential difference, as alleged, it appears in the will found after the death of the testator and in contest, and the one claimed to have been lost, is that in the former Mrs. McDonald was given the Washington street property, in fee simple, while in the latter she was only given a life estate therein. John M. Butler, it is conceded, for years prior to the death of the testator, was his confidential friend and law partner. At the time of the last sickness of the deceased, and about ten days before his death, and when the testator seemed to think that death would be the probable result of his sickness, Butler called at his house to see him, and in a conversation there, had in the absence of Mrs. McDonald, after talking over his business with Butler, the testator said to him substantially as follows: "I have made a will, and want to tell you all about its contents, and where you will find it, so if I die, you can find it and turn it over to the executor." He then stated where the will would be found, and proceeded to state its contents as follows:

"I have given a life estate in the Washington street property to Mrs. McDonald, with the fee to "Jessie," "Joe" and "Mack" (meaning appellees). I have given to Mrs. McDonald all of my private library, household furniture, bric-a-brac, paintings, and all of my household goods. I have given to Scott (meaning appellee, Malcolm S.), if he becomes a lawyer, my law library and gold watch." He then requested Butler to repeat over to him the contents as he had just stated them, which he did, and the testator then said: "You have got it all right. You understand it perfectly."

These declarations of the testator the court permitted this witness to give to the jury. Appellants at the time objected to them being admitted as evidence, upon the grounds that there was no issue upon mental incapacity, and second, that they were not admissible for showing the contents of a lost, or destroyed will, because there had been no evidence of the execution of any such will. But upon appellees stating to the court that there would be evidence of the execution of the alleged lost will, the objection was overruled. The contention of the learned counsel for appellants is, that these declarations went to the jury for all purposes, and upon all the issues in the case, without limitation. It is settled in this State that the declarations of a testator, made at a time other than when the will was executed, are not admissible in an action of contest upon the issue of fraud, or undue influence. *Runkle* v. *Gates*, 11 Ind. 95 ; *Hayes* v. *West*, 37 Ind. 21.

But it is evident, we think, from the instructions of the court to the jury, that the declarations were admitted in evidence, and the jury permitted to consider them for the purpose only of showing the contents of the alleged lost or destroyed will, and whether, if such

a will ever existed, it remained unrevoked at the death of the testator.

We recognize as a settled principle of law that where the testator retains the possession or control of his will, and at or after his death it is not found, or is found thereafter in a mutilated or defaced condition, the presumption arises that he destroyed or mutilated it for the purpose of revoking it, but this presumption may be rebutted by evidence. It is insisted by appellees that these statements were proper to go to the jury :

First, to rebut the presumption that the lost or destroyed will in question had been destroyed by the testator *animo revocandi.* That appellees, having brought their action as devisees under such a will, the burden was cast upon them to rebut such presumption.

Second, that they were also admissible to show the contents of the lost will in order to establish that appellees were interested in the estate as devisees or legatees, that being the capacity in which they sued. This contention of appellees, we are of the opinion, must be sustained. As we have herein held, appellees based their right to contest the probated will upon the alleged facts, showing that they were interested as devisees in the genuine will which they alleged had been lost or destroyed, and that the same had not been destroyed by or through the agency of the testator. This they were required to sustain by evidence upon the trial, or fail in their action. The proposition is not controverted, and is settled, we think, that where a will is shown to be lost or destroyed, secondary evidence of its contents, when necessary, may be received. *Clark* v. *Wright,* 3 Pick. 67; *Brown* v. *Brown,* 92 Eng. Com. L. 875, and other authorities support this rule.

The best secondary evidence in existence, under this rule, must be produced. The proposition that these dec-

larations made to Butler by the testator were admissible to rebut the legal presumption arising from the fact as claimed that the lost, stolen, or destroyed will in controversy at the date of the testator's death was in his possession or under his control, had not been revoked by him, is supported by the following authorities: *McBeth* v. *McBeth*, 11 Ala. 596; *Conoly* v. *Gayle*, 61 Ala. 116; *Morris* v. *Swaney*, 7 Heisk. 591; *Lawyer* v. *Smith*, 8 Mich. 411; *Hope's Appeal*, 48 Mich. 518; *Betts* v. *Jackson*, 6 Wend. 173; *Everett* v. *Everett*, 41 Barb. 385; *Foster's Appeal*, 87 Pa, St. 67; *Pickens* v. *Davis*, 134 Mass. 252; *In Re Johnson's Will*, 40 Conn. 587; *Patten* v. *Poulton*, 1 Sw. & Tr. 55; *Keen* v. *Keen*, Law Reps. 3 P. & D. 105; *Usticke* v. *Bawden*, 2 Addams, 116; *Welch* v. *Phillips*, 1 Moore P. C. 299; *Battyl* v. *Lyles*, 4 Jur. (New Series) 718; *Finch* v. *Finch*, Law Reps., 1 P. & D. 371; *In Bonis Barber*, Law Reps., 1 P. & D. 267; *Whiteley* v. *King*, 112 Eng. Com. L. 756.

That the statements or declarations of a testator may be received in the absence of evidence of a higher character to prove the contents or provisions of a lost or destroyed will, finds support in the following English and American authorities: *Sugden* v. *Lord St. Leonards*, 17 Eng. Rep. (Moak's notes), 453 and 542; *Gould* v. *Lakes*, Law Rep., 6 P. D. 1; *Burls* v. *Burls*, Law R., 1 P. & D. *472; *In Bonis Barber*, Law R., 1 P. & D. 267; *Johnson* v. *Lyford*, Law R., 1 P. & D. *546; *Battyll* v. *Lyles*, 4 Jur. (New Series) 718; *Finch* v. *Finch*, Law Rep., 1 P. & D. 371; *Davis* v. *Davis*, 2 Add. 223; *Keen* v. *Keen*, Law Rep., 3 P. & D. 105; *Pickens* v. *Davis*, 134 Mass 252; *In the matter of Page*, 118 Ill. 576; *Hope's Appeal*, 48 Mich. 518; *In Re Lambie Estate*, 97 Mich. 49; *Foster's Appeal*, 87 Pa. St. 67; *Connolly* v. *Gayle*, 61 Ala. 116; *McBeth* v. *McBeth*, 11 Ala. 596; *Morris* v. *Swaney*, 7 Heisk. 591; *Reel's Exr.* v.

*Reel,* 1 Hawks. (N. C.) 248, 268; *Howell* v. *Barden,* 3 Dev. 442; *Simms* v. *Simms,* 5 Ired. (Law) 684, Theobald "Law of Wills," pp. 42, 43 ; Floods "Wills of Personal Property," pp. 425, 429, 432 ; Walkem Wills, p. 360 ; 1 Jarman Wills (5th Bigelow's Ed.), pp. 130, 133, 134, 142 and notes, 268 ; Stephen's Digest of Evidence, article 29 , 5 Am. and Eng. Ency. of Law 368 (f); 7 Am. and Eng. Ency. of Law 73.

As settled by some of these authorities, such statements of the testator should be received as evidence with great caution ; for the reason that they are sometimes made by him for the express purpose of misleading or satisfying curious friends or expectant relatives. But the declarations in the case at bar are not open to this objection ; they were voluntarily made to a confidential friend, one who apparently had no interest in the estate of the testator, and not in response to any inquiry by him made. Considering the circumstances under which they were made by the testator at a time when sick, but in the full control of his mental faculties, and when he seemingly recognized that his death was a near probability, and they appear to us to bear upon their face the very impress of sincerity. We think they were clearly competent for the purpose for which as it is claimed by appellees they were introduced.

If the declarations of the testator are legitimate evidence to prove the contents in a proceeding to have a lost will admitted to probate, which the authorities, we think, seem to fully authorize and support, in reason they must be equally so under the issues in the case at bar, to show the contents of the lost will in question, in order that the interest of the appellees in the estate might appear, and the presumption of revocation rebutted.

Instruction eight given by the court is as follows:

"It is conceded by both the parties to this suit that a will was duly executed by Senator McDonald at his law office in the city of Indianapolis, on the 26th day of August, 1890, and duly attested by the witnesses, Snow and Daniels; but the plaintiffs charge that said genuine last will and testament was removed, lost or stolen without the knowledge or consent of said testator or the plaintiffs, and the will now in contest substituted and foisted in the room, and in place of said genuine will. The defendants deny this charge and aver that the will in contest is the identical will so executed as aforesaid. Under this issue I have allowed the plaintiffs to introduce in evidence certain alleged declarations of said testator, relating to the contents of said will; if you find that such declarations were made, you will only consider them for the purpose of determining the character and contents of such alleged lost or destroyed will, and whether, if it ever existed, it remained unrevoked at the time of the death of the testator, no inference in support of the other issues and charges in this case can be drawn by you from these alleged declarations."

At the proper time the appellants requested the court to give the following instruction, number ten, which was refused:

"If the jury shall find that Joseph E. McDonald in his last sickness made certain declarations touching the contents of his will, as testified to by John M. Butler, Esq., then the court instructs you that such declarations or statements of Senator McDonald cannot be considered by the jury in determining the question of the genuineness of the will in contest. For the law is, "A testator's own declarations to prove that a will, apparently regular, was forged * * * are hearsay and inadmissible."

It is contended by appellants that instruction No. 8 given by the court was not sufficiently clear and explicit in limiting the jurors in the consideration of the declarations in question, and that, hence, No. 10, as requested, should have been given. It is well settled by repeated decisions of this court that it is not error for the trial court to refuse an instruction requested, although accurately stating the law, if the same proposition is substantially given in another instruction. In the eighth instruction the court called the attention of the jury to the declarations admitted in evidence, and stated that these should only be considered to determine the character and contents of the alleged lost or destroyed will, and whether if it ever existed it remained unrevoked at the time of the testator's death. Not content with this, the court proceeded further and impressed upon the jury the fact that they were prohibited from drawing from this evidence any inference in support of the other issues and charges in the case. The declarations of the testator, for the same purpose, were testified to by James D. McDonald, a witness for appellees, and the court in this instruction intended to, we suppose, and did embrace his evidence, as well as that of Mr. Butler's, and in this respect, at least, the instruction was more favorable to appellants than the one requested, as that singled out the declarations made to Butler only in the testator's last sickness. We are of the opinion that the court embodied in its instruction all that was substantially necessary for the information of the jury as to the manner in which they were to apply and consider these declarations. We cannot presume that intelligent jurors, where evidence has been admitted for a certain purpose, will consider it upon other issues, or for other purposes, when the court has expressly stated

to them that they must not do so.    It must be presumed that the jury obeyed the court's injunction.

There was no error in refusing the instruction asked by appellants.

The next question presented and argued by appellants in their brief is that the court erred in not allowing the appellant, Mrs. McDonald, to testify in regard to the circumstances under which the carbon or black will, claimed to be a duplicate of the will in contest, came into her possession.    It was apparently admitted that this had reference to a matter which occurred during the life of the testator.    As this was a matter occuring prior to his death, and she being a party to the issues involved, we think, she was not competent to testify respecting things not open to the observation of all the friends and acquaintances of the deceased, by reason of the prohibition of section 499, R. S. 1881 (section 507, R. S. 1894).    We must construe this section as applicable to parties, as witnesses, in an action to contest the will, the exception being that stated in *Lamb* v. *Lamb*, 105 Ind. 456, namely, that parties are only competent to testify in respect to such matters as were open to the observation of all the friends and acquaintances of the deceased ancestor.    Counsel for appellants insist that the action was not founded upon a contract or demand against the ancestor, and for that reason the section 499, *supra*, could have no application. But the word "*demand*," as used in this statute, has been held to be one of broad meaning ; and it may well be held to apply to an action by or against devisees in relation to a will of the ancestor.    To say the least, however, the ultimate object of a *suit* to contest a will is to *affect in some manner the property of the ancestor*. Suits to contest a will, we think, come clearly within the spirit and meaning of this section, if not within its

express letter. *Peacock* v. *Albin*, 39 Ind. 25 ; *Wiseman* v. *Wiseman*, 73 Ind. 112 ; *Staser* v. *Hogan*, 120 Ind. 207 ; *Larch* v. *Goodacre*, 126 Ind. 224.

It was apparently sought to be shown by Mrs. McDonald that the transaction under which she came into possession of the black or carbon duplicate of the will in suit, was connected with the deceased, and was confined to her and him alone. Both parties to the action were permitted by the court to testify in respect to the genuineness of the signature of the testator, and Mrs. McDonald was also permitted to testify that from the time of her husband's death until the date when she was examined as a party by order of court, this carbon will had been in the safety vault at the bank, but she was not allowed to testify that when she got the will out of the vault it was in an envelope, nor where this envelope was immediately upon the happening of the testator's death. The trial court seems to have excluded this last evidence upon the grounds that the envelope inquired about was not produced along with the will under the order of court. Whether the court erred in excluding this we need not consider, for the reason that counsel for appellants have failed to establish to our satisfaction that the evidence was relevant or material, and therefore the error of the court's ruling, if any, does not affirmatively appear. Some objections are made to a question which the trial court permitted appellees to put to Mr. Ewell, a witness called by them as an expert upon handwriting. The witness after stating the facts showing him to be an expert, and also giving to the jury facts which he had discovered, and peculiarities observed, in regard to the signatures in question by an examination which he had made, was allowed by the court over objections of appellants, to answer this question : ''From the examination which you have made

of these two documents (the green and black will), what is your opinion as to whether the signatures appearing to them are genuine?" He answered; "That they were not genuine." The grounds of objections urged, are that an expert witness must testify either from facts stated by himself to the jury, or from those testified to, or to be testified to, by other witnesses, and put to him in the form of a hypothetical question. This latter condition has no application, as the opinion of the witness was not sought upon a hypothesis. We do not think that the question is open to the first objection, as we think the question fairly imported and must have been so understood by the witness and jury that the opinion asked for was one based upon the facts derived by him from his examination made, all of which has been detailed by him to the jury. The witness was not asked to give his opinion from what he supposed he knew, but from facts testified to by him, and, hence, the rule laid down in *Burns, Exr.,* v. *Barenfield,* 84 Ind. 43, does not apply. There was no error under the facts as they appear, in allowing the witness to answer this question.

Some exceptions and criticisms are urged upon the refusal of the court to give upon the question of forgery instructions number thirteen, fourteen and fifteen, requested by appellants. On this question the court instructed the jury in its instruction number nine as follows:

"I will now direct your attention to the law bearing upon the charge of forgery as made in this case; in civil as well as in criminal actions, the law indulges the presumption of innocence and fair dealing in all transactions; in this particular case the law presumes that the signatures to the will in contest are genuine, and not forged, and that the defendant is innocent of all

criminal conduct in relation thereto. In criminal charges the presumption of innocence must be overthrown, and guilt proven beyond a reasonable doubt, in order to secure a conviction ; but in civil cases, like the present, involving a charge of criminality, the rule of proof is different and not so strong. For the plaintiffs to recover upon the charge of forgery, they are not compelled to prove the charge beyond a reasonable doubt, but the law is satisfied, and you must be, if the charge is proven by a fair preponderance of the evidence, that is, the evi- dence in favor of the forgery must overcome. the presumption of innocence, and all countervailing evidence of genuineness."

Upon an examination of instructions thirteen and fourteen refused, we are of the opinion that the court did not err in so doing. Everything as a matter of law relative to the question of forgery, under the pleadings to which appellants were entitled as of right, is substantially and clearly given in the instruction nine, therefore under the firmly settled rule appellants have no just grounds of complaint.

By instruction fifteen the court was asked to charge that "The failure on the part of the plaintiffs to either allege   in their complaint, or point out in the evidence, any person as the person  who committed the alleged forgery or procured the same to be committed, was a circumstance proper to be considered in connection with the other facts tending to disprove the charge of forgery." It cannot be seriously contended that appellees, in order to set aside the probated will upon the grounds that it was a counterfeit, were required to specifically allege in their complaint, and point out in the evidence, the identical person whose hand had perpetrated the forgery. There was no attempt by reason of this action to convict any one of the crime of forgery. Their failure to do

that which was not required in order to maintain and succeed in their action, could not be considered as a circumstance against them. The instruction is also apparently faulty because it assumed the failure to point out in the evidence, as an actual fact, regardless of the evidence upon that question, and the action of the court in refusing to give it was correct. Complaint is also made for the reason that the court refused to give instruction number nine relating to the probative weight of expert testimony. We think, however, that the jury was sufficiently instructed on this point in the instruction given by the court on its own motion.

The jury on the trial returned a general verdict for the plaintiffs, and by their answer to interrogatories found that the will in contest had not been executed by the testator.

When the court came to enter its judgment upon the verdict, the appellant, Mrs. McDonald, demanded that the lost or destroyed will mentioned in the amended complaint should be adjudged as established by the decree and probated. This the court refused to do. An extended argument is presented upon this question by counsel, *pro* and *con.* As we have held that by the theory of the complaint it was not contemplated to establish and probate the alleged lost will, and as the appellant was not demanding any such relief by any pleading in the case, it is evident, we think, that there were no grounds for such a demand. We do not wish to be understood, however, as deciding that the lost will in question could, or could not have been established and probated in this action.

As to whether this will can be established by either party in a subsequent proceeding is not a question now before the court. Other questions are referred to by counsel for appellants, but as they are not presented

with any apparent earnestness, and as it does not affirmatively appear by the record that appellants were prejudiced in their rights by the rulings of the court thereon, we do not deem it·necessary to specifically mention them and thereby extend this opinion.

Owing to the importance of this case, and the questions involved, we have given it a patient and careful examination, and are satisfied that no error of the trial court appears that would justify a reversal. It is therefore adjudged that the judgment be affirmed. .

Filed September 19, 1895.