## Conoly *v.* Gayle.

*Application to establish and probate lost Will.*

1. *Will; what will not vitiate.*—Irrelevant recitals will not vitiate a will, and if it be duly attested by the requisite number of subscribing witnesses, the fact that another of the subscribing witnesses was incompetent to prove its execution, is entirely immaterial.

2. *Witness; competency of.*—The exception to the competency of witnesses, as declared by statute, (Code, § 3058), relates to " transactions with, or statements by a deceased person," whose estate is interested, &c., and does not disqualify a legatee or devisee, under a will propounded for probate, from testifying as to other matters connected therewith; hence when such person is offered as a witness, a general objection to his competency can not be entertained; but objection should be made to such testimony as infringes the rule declared by the statute.

3. *Lost instrument; rule as to proof of contents.*—As a general rule, where the loss of a written instrument is sought to be proved, its loss should be shown, before allowing evidence of its contents; but it rests in the sound discretion of the lower court to modify, or change, the rule in a particular case; and the exercise of that discretion is not revisable.

4. *Assignment of error; what not subject of.*—Allowing a question to be asked, which was not answered, will not support an assignment of error.

5. *Order of introducing evidence, ruling as to ; what not erroneous.*—Proponent was a witness, as to the loss of the will, and contestant, on cross-examination, exhibited a copy of a bill in chancery, filed and verified by her prior to that time, which she made affidavit to, knowing it averred that decedent died intestate. By agreement of counsel, it was expressly understood that this copy was to be read in evidence, but contestant declined to do this, until proponent closed her evidence; and thereupon the court, at proponent's instance, required the copy to be read then,—*held*, not error.

6. *Evidence ; what properly excluded.*—Where a part of the bill, in which complainant asserted facts to be different from what she afterwards alleged them to be, was allowed for the purpose of discrediting her testimony—other portions of the record not touching that question, and shedding no light on the issue, are irrelevant and properly excluded.

7. *Same.*—Where the record of proceedings in another court is legitimate only to show a right to appear and defend the suit, and that has already been conceded, it is not error to rule out such record.

APPEAL from Probate Court of Mobile.
Tried before Hon. PRICE WILLIAMS, Jr.

[Conoly v. Gayle.]

This was an application by Anna M. Gayle, to establish as the last will and testament of her mother, Mrs. Mary L. Gayle, what purported to be a substantial copy of a will left by her, which had been lost while in the possession of proponent. The appellant, John F. Conoly, having shown that he had become the owner, by purchase at a sale in bankruptcy, of the life-estate of Reese D. Gayle, the husband of said Mary L. Gayle, in certain lands belonging to her, was permitted to contest the probate of the alleged will. The writing which was offered for probate, as a copy of the lost will, is as follows: "I do most earnestly declare, that I did not, of my own free will and accord, sign the note held by George Craig, but made to J. D. Craig, by my husband. I did, at the earnest solicitation of my husband and J. D. Craig, who promised me if I would do it, I should never be troubled about it, as he only wanted it to save his property, and that if I did not go security on it, he would be sold out of house and home. Reese told me that he had a right to the income of my property, and if I did not sign it, he would take that and pay it, and I then consented to do it, to put bread and meat in my childrens' mouths. The note was at one time held by Ed. Woods, who came with George Craig and tried to persuade me to become principal, instead of security, and I refused. Ed. Woods then claimed the note. Now, George Craig says it belongs to him, and he intends suing me for it. I don't want a dime of my property to go to pay such debts, for I have lost enough by that family; but when I die I want my property, of all sort and description, to go to my five children, after my debts are paid. I do not want a dime taken for anything else.

"M. L. GAYLE.

"February. Witnessed by Adria Gill, Rebecca D. Gayle, Laura M. Johnson."

The court ordered a jury to determine the questions of fact, and the jury rendered a verdict to the effect that Mrs. Gayle had died testate, and that the paper offered for probate was a substantial copy of her will, and a decree was rendered accordingly.

On the trial, proponent introduced as a witness Mrs. Rebecca Johnson, formerly Rebecca Gayle, who testified that she was a daughter of Mary L. Gayle, deceased. The contestant here objected to the competency of said witness, on the ground that she was a legatee and devisee under the will sought to be established. The court overruled this objection, and contestant excepted. The proponent then asked witness

the following question : " Do you know anything of a paper written by, or at the request of Mary L. Gayle in her life-time, purporting to be her will?" In asking this question, as to the contents of the will, counsel stated that he would prove the loss of the original will, and that for convenience he asked to be permitted to examine this witness, as to the contents of the will, at this time, subject to the decision of the court, upon the proof of loss to be made by other wit-nesses. The contestant objected to the question; his objec-tion was overruled, and he excepted. The witness then testified, that she knew of a paper written at her mother's request, and purporting to be her will; that at the time it was written, her mother was very ill, and asked Miss Laura Johnson to write it for her; that her mother signed the paper, and Miss Laura Johnson, Miss Adria Gill and herself, signed as witnesses, in the presence of her mother and at her bed-side ; that this took place in Cahaba, Dallas county, Ala-bama, and about the month of February, 1871.

Witness was then asked by proponent, " what she consid-ered was the state of Mrs. Maria L. Gayle's mind at that time." Contestant objected to this question, his objection was overruled, and he excepted. It is nowhere shown that this question was answered. Witness was then permitted, against the objection and exception of contestant, before the proof of loss of said paper, but upon the statement of counsel that the evidence was offered subject to proof of such loss, to state her recollection of the contents of said will as follows : " I remember my mother told Miss Laura, to write that the note she signed as security for her husband, Reese D. Gayle, to Craig, she did not want paid, as she was forced to sign it, and did not want her property to go to pay it." Witness stated that she did not recollect the exact words, and did not remember any other portion of said will.

Proponent then showed witness a letter written in pencil, and asked her if she knew who wrote the letter, and the handwriting. Contestant objected to the question, his objec-tion was overruled, and he excepted. The witness then stated " that her mother wrote the letter to her (witness') sister, Anna M. Gayle, who was then at Selma; that it was in her mother's handwriting. Said letter was then intro-duced in evidence against the objection and exception of contestant. The part of said letter material to this case is the postscript, which reads as follows :

" MY DAUGHTER.—You had better come home. I had another attack of my heart last night. I am afraid I won't

[Conoly v. Gayle.]

live to see Gen. Morgan, and have gotten Miss Laura to write my will, and Addie and Beckie witnessed, and don't forget to see Judge Conoly and have my name taken off Ma's bond. Gill will meet you at the boat Saturday. I am too weak to write more. Yours affect.

"M. L. GAYLE."

"If Gen. Morgan is in Selma, tell him I want to see him. I will have him to write my will over. I don't want anything wrong in it. Miss Laura will keep this will, until I have another written. Affect. yours,

"M. L. GAYLE.

This witness, Rebecca Johnson, on cross-examination, testified as to the circumstances of the making of the will, substantially as set out above, and in addition thereto, stated that her mother, as soon as the will was written, delivered it to Miss Laura Johnson, who, in company with witness, carried it up stairs and deposited it in her trunk, which was broken and could not be locked, and that in December, 1871, or January, 1872, Miss Laura Johnson delivered the will to Anna M. Gayle, the proponent.

Mrs. Adria Tice, formerly Miss Adria Gill, was then introduced as a witness for proponent, and testified that she was present at the making of the will—saw it written by Miss Laura Johnson, at the request of Mrs. Gayle, and saw Mrs. Gayle sign it; that it was then signed by Laura Johnson, Rebecca Gayle and witness, in the presence of Mrs. Gayle. This witness was examined as to the contents of the will, before the loss was shown, upon the statement by counsel that the evidence was offered, subject to proof of loss. To this the contestant objected, and reserved an exception. The testimony of this witness as to the contents of the will was substantially the same as that of the witness Rebecca Johnson. This witness then testified as to the writing of the letter from Mrs. Gayle to Anna M. Gayle; that the body of the letter was written by Mrs. Gayle on the morning before she wrote the will, and that the postscript was written on the next morning, and after the will had been written, and that she knew the handwriting of Mrs. Gayle, and that the letter was in her handwriting.

Proponent, Anna M. Gayle, was then introduced as a witness, and the contestant objected to her competency on the following grounds, 1st, that she was the proponent of the will; 2d, that she was not a subscribing witness to said alleged will; 3d, because she was interested in the establishment of said lost will as devisee or legatee. These objections

were overruled by the court, and contestant excepted. She then testified that she was the daughter of Mrs. Mary L. Gayle, who died in Mobile on the 5th day of December, 1871; that four or five days after her mother's death, Miss Laura Johnson handed her the paper, purporting to be the last will of her mother; that she put this paper, together with a deed to a cemetery lot, in a purse in a trunk where she kept it all the time; that in the spring of 1873, witness went to Sardis, Miss., taking her trunk, with the purse and papers in it; that while in Sardis she spent ten or twelve days with a cousin (a "Mrs. Wright"), and that on leaving, her trunk was sent to Sardis on a wagon, with several negroes, she having preceded it; that when she received her trunk at Sardis, she discovered that it had been opened, and that she made diligent search for the missing deed and will, and could not find them; and that she had been unable to find it since. The paper purporting to be a copy of the will, and which had been offered for probate, was here shown the witness, and she was asked " to state if said paper contains a substantial copy of the paper which you have said was handed you by Laura Johnson, after your mother's death." This question was objected to, the objection overruled, and the witness permitted, against the exception of contestant, to testify " that the paper shown her was in her handwriting, and contained a substantial copy of the paper handed her by Laura Johnson, as the will of Mary L. Gayle; that she wrote the paper, about three or four weeks before the suit was commenced, and that it contains a substantial statement of her recollection of the contents of the original." She further testified, that she had made the copy for the purpose of sending it to Mobile to be filed in the Probate Court, and that she had done this at the request of her attorneys. This paper was then read to the jury, against the objection of contestant, and he excepted. On her cross-examination, the contestant, after an express agreement and understanding with the proponent, that he would introduce in evidence a certified copy of the bill in chancery at Selma, showed the witness a certified copy of a bill in chancery at Selma, Ala., with the affidavit thereto, and asked her if she did not swear to the same, and have the same filed in the Chancery Court at Selma, and if she did not know that said bill stated that Mary L. Gayle had died intestate. Witness then answered that she had the bill filed, and swore to the same, knowing it contained the statement that her mother had died intestate. Proponent then moved the court to require contestant to

read the bill and affidavit then—to which the contestant objected, and stated to the court that they expected to introduce the bill and affidavit in evidence after the proponent had closed. The court granted the motion of proponent, and required the contestant then to read the bill and affidavit, if he intended to use the same in evidence, and he excepted. This witness was then permitted to testify, against the objection and exception of contestant, as to the reasons why she believed, when the bill was prepared, that Mrs. Gayle had died intestate. The solicitor who prepared and filed the bill in chancery, also testified as to the reason why said bill contained the averment of Mrs. Gayle's death intestate.

Proponent here rested her case. The contestant having, as before stated, read in evidence the bill and affidavit filed in the Chancery Court at Selma, without objection on the part of proponent, upon the distinct statement that his only object in offering said record, was to show the imperfection of the memory of proponent, now offered to introduce the answer of Conoly and the exhibits, and the orders and decrees made in the case. On objection of the proponent, the court excluded the record offered, and contestant excepted. Contestant also offered a transcript from the District Court of the United States, for the Middle District of Alabama, in the matter of the bankruptcy of Reese D. Gayle, and the original deed, of the assignee in bankruptcy, to the contestant, of the interest of Reese D. Gayle in the lands of Mary L. Gayle. The court, on the objection of proponent, refused to allow this evidence to be introduced, and contestant excepted. The various rulings to which exception was reserved, and the decree rendered, are now assigned as error.

BOYLES & OVERALL, and PETTUS, DAWSON & TILLMAN, for appellant.—The loss of the alleged will should have been shown, and that search had been made in every place where it was reasonable to suppose it could be found, before secondary evidence could be introduced to prove its contents; and until this was done, no secondary evidence of its contents should have been received.—2 Redfield on Wills, p. 7. The witness, Rebecca Johnson, was incompetent.—Code of 1876, § 3658. The paper alleged to be a substantial copy of the lost will was not sufficiently proven, to be evidence. The witness does not establish that the paper said to be lost was a will. Rebecca Johnson testifies to no testamentary clauses in the lost paper, and the witnesses differ materially as to what were the contents of that paper. The court erred

[Conoly v. Gayle.]

in compelling the contestant to read the bill and affidavit in evidence before proponent had closed her testimony. It was competent for him on cross-examination to prove her signature, and not introduce the record until all her evidence was in.

W. R. NELSON, *contra.*—As to the jurisdiction of the Probate Court to hear and determine the application in such a case as this, see 3 Port. 51; 11 Ala. 599. When a will is lost or mislaid, whether accidentally or by design, its contents may be proved, and probate granted of the same, upon such evidence as is satisfactory to the court.—Redfield on Wills, part 2, page 6, § 6; 35 N. Y. 653; 26 N. Y. 437; *Everett v. Everett,* 41 Barb.; 39 Georgia, 168; 7 Heiskell, 598.

The paper is clearly a will. It is not requisite to the validity of the will that it should assume any particular form, or that it should be couched in language technically appropriate to its testamentary character.—52 Ala. 436; 19 Ala. 59. It clearly directs what shall be done with her property and contains no words of grant or conveyance. It is clear that section 3058 of the Code can have no application to a case like this. That statute does not extend the disability beyond *transactions with or statements by the deceased,* and a general objection as to competency was properly overruled.

The record of the chancery suit between the proponent and the other children of M. L. Gayle and Conoly could shed no light on the question at issue, and was properly excluded; so was the record in bankruptcy.

MANNING, J.—1. Though very inartificially written, the instrument proved can have effect and operation as a will, if (as the jury have found) Mrs. Gayle executed it and procured the subscribing witnesses to attest it, as her will. It is not vitiated by the irrelevant recitals in it.

2. The law of this State requires no more than two subscribing witnesses to a will, of either real or personal property, and this instrument having been attested by two persons who had no interest in Mrs. Gayle's estate, either as heir, distributee, legatee, devisee or otherwise, the fact that a third person who did stand in such relations, also signed it as a witness, can not impair its validity.

3. The instrument alleged to be the will of Mrs. Gayle, if operative as such, gives her property to all her children equally. One of these, Rebecca, was offered as a witness at the trial, and contestant "objected to the competency of this

[Conoly v. Gayle.]

witness on the ground that she is . . . . a legatee or devisee under the will propounded for probate, and interested in the establishment" of it, which objection was overruled. By section 3058 (2704) of the Code of 1876, it is enacted that " in other than criminal cases there must be no exclusion of any witness because he is a party, or interested in the issue tried,—except that neither party shall be allowed to testify against the other, as to any transaction with or statement by any deceased person, whose estate is interested in the result of the suit," &c. This exception does not disqualify the witness from testifying about other matters than such statements or declarations; and for this reason, the objection to her testifying at all, was properly overruled.—*O'Neal v. Reynolds*, 42 Ala. 197.

4. After giving some other testimony, this witness was asked: "Do you know anything of a paper written by or at the request of Mary L. Gayle in her life-time, purporting to be her will?" And it was stated by counsel when the question was asked, that he would prove the loss of the original will; and he asked leave for convenience sake to examine the witness now as to its contents, subject to the decision of the court, upon the proof of loss, to be made by other witnesses. Upon this statement of counsel and "for convenience in conducting the trial," (as the bill of exceptions recites), the court allowed the question to be asked. Contestant objected to the question, and excepted to the ruling of the court. The assignment of error upon this, relates not to the competency of the witness to testify, but solely to the order in which the evidence should be admitted, contestant insisting that the loss of the paper should be established, before testimony was given of its contents. A similar exception for the same reason, was subsequently taken to the testimony of Miss Adria Gill, afterwards Mrs. Tice.

In regard to the general rule on this subject, there can be no doubt. And in the cases of alleged lost wills, it should seldom be departed from. The loss of the instrument ought except in rare instances, to be proved before evidence is received of the contents. But such matters are within the control of the presiding judge. Reasons may exist which would justify him in allowing a suspension of the rule for a particular occasion; and his action in doing so, is not subject to reversal here.

5. To the question as to the condition of her mother's mind, put to the witness, Rebecca, no response appears to have been made; and no legal proposition can be raised for

·discussion here, upon an objection to an unanswered inter-
rogatory.

6. When Anna M. Gayle, the proponent in this case, was
offered as witness in it, the contestant objected to her com-
petency to testify: 1st. Because "she was proponent of the
alleged lost will." 2d. Because she was not a subscribing
witness to it; and 3d. Because she was interested as devisee
or legatee in the establishment of it. The objection was
overruled and contestant excepted.

As we have before seen, the statute makes a party or per-
son interested, competent to testify in their own behalf—
except in relation to "statements by or transactions with
the deceased," &c. The objection was not to evidence from
witness, of such statements or transactions, (she gave no
such evidence) but to her being a witness at all. There was
no error in overruling that objection.

7. When a person dying, leaves an instrument duly exe-
cuted as a will, and intended to operate as such,—and it is
afterwards lost or destroyed, it is only by other evidence
oral or written that proof of it can be made. Evidence of
the execution and loss being made in this case, objections to
the admission of the letter written by testatrix in which she
speaks of having made her will and of those present when
she did so, and to oral testimony of its contents, can not be
sustained.

8. Upon cross-examination, proponent was shown a cer-
tified copy of a bill in chancery she had filed, and of her
affidavit verifying it, and asked if she did not swear thereto
knowing that the bill contained an averment that her mother,
Mary L. Gayle, died intestate. She answered that she did.
This copy of the bill was by "expressed agreement and un-
derstanding with proponent," to be read in evidence; but
contestant's counsel declined to permit this to be done, till
the case was closed on proponent's part. Thereupon the
court, upon motion of the latter, required the bill to be read
then; which was done accordingly, against the objection and
exception of contestant. And the cross-examination being
finished, proponent first, and the solicitor who wrote the bill
afterwards, explained as witnesses, the reasons why they,
respectively, believed, when the bill was prepared, that Mrs.
Gayle had died intestate.

A defendant may, upon cross-examination, prove by his
adversary's witness the signature to a document he intends
afterwards to introduce, and withhold it until plaintiff's evi-
dence is in. But in this case contestant went further. To

his interrogatories containing the inquiries, proponent testified that she had sworn—not merely to the truth of a bill the contents of which were not made known to the jury, but that she swore to it knowing that it contained an averment, that she, whose alleged will, the witness was then endeavoring to establish, had died without leaving a will. And this answer was made upon a prior agreement that the copy of the bill should be put in evidence; so, of course, that it might be seen under what circumstances and in what terms, the averment was made. We think the court did not err in requiring the bill to be then read.

9. The object of introducing this evidence was to create in the minds of the jury distrust of the testimony of proponent. The other portions of the chancery record, composed in part of the answer of contestant, Conoly, the agreement of counsel and the decree of the court, were wholly irrelevant for that purpose, and to the issues—then to be tried by the jury —to-wit: whether Mrs. Gayle had left a will or not, and what its terms were, if she did. The introduction of all this record could only have confused the jury. There was no error in excluding such documents.

10. Nor was there any error in refusing to admit the record of the proceedings in bankruptcy against Reese D. Gayle. As purchaser of his interest in lands of Mrs. Gayle's estate, Conoly had already been permitted to intervene, as contestant, and it was only to entitle him to take this position that the record from the bankruptcy court could be of any use.

We find no error in the rulings of the judge of probate upon any point that is presented for our consideration by the exceptions and assignments of error.

Let the judgment of the Probate Court be affirmed.