DON B. CHARLES et al., Appellants, v. MAY BELLE CHARLES et al.

Division One, March 12, 1926.

1. **WILL: Lost: Appellate Practice.** On the single issue whether the testator left a will and that it was lost before probate, and whether its contents were what the trial court found them to be, the findings of fact made by the trial court sitting as a jury are conclusive on appeal, if there is any substantial evidence on which to base them.

2. ————: **Proof of Execution and Loss.** The testator died in 1922, leaving a wife, a brother and two sisters. He and his wife were devoted to each other and he had often stated that he had willed his property to her. Upon the regularly-kept office-account book of a lawyer, who had been probate judge, was an entry of one dollar for writing a will for testator in December, 1914. It was shown that, in December, 1914, he delivered a will, witnessed by the lawyer and another, to his wife; that she kept it personally for a time, and then put it in a rented box in a bank; that the bank was twice robbed, and in the second robbery in 1921 this box was burglarized, and that the box had been previously rented and used by her alone. A relative, but not a beneficiary, living with testator's family, testified that the instrument at testator's home, and later in the bank, bore the signature of the testator and what purported to be the signature of the two witnesses, and that he read the instrument in testator's home and recognized testator's signature thereto. Two or three days before he died testator told his family physician that he had his affairs arranged, and that he had made a will and that his wife would get the property. When the will was made in 1914, he had a living son, and by it he gave to the son the west half of Lot Three in a certain quarter section, and the residue of his property to his wife; when he died in 1922, this son was dead, and he left no surviving descendants, and the contestants are his brother and two sisters. Upon his death the bank box was searched, and no will was found. The lawyer who wrote the will

was deceased at the time of the trial. The other subscribing witness testified that he had probably witnessed fifty wills for the lawyer, as their places of business were close; that he thought he had witnessed this will, but would not be absolutely certain without examining the will itself and his signature; and that he remembered that testator came into his place of business, and introduced himself; and all the circumstances detailed by him tend strongly to show that he signed the will as a witness. A witness testified that deceased had told him that his will was in the safety box at the bank. There was no evidence that he had revoked the will or ever made another. None of this testimony was contradicted. *Held*, that the finding of the trial court that the will had been executed by deceased and was lost was sufficiently substantial to be conclusive on those issues on appeal.

3. **EVIDENCE: Best: Qualification: Contents of Lost Will.** The rule of law that demands of a party the best evidence of a fact to be proven is qualified to mean that he must produce the best evidence available to him. In proving the contents of a lost will, whose execution is sufficiently proven, the question is not whether its contents have been established by the best evidence, but whether it has been established by the best evidence procurable in the peculiar situation.

4. **LOST WILL: Contents: Presumption: Revocation.** Where it is shown that another person was in the custody of a will, there is no presumption that the lost or missing will was destroyed by testator for the purpose of revoking it.

5. ———: ———: **Death of Witness.** The death or forgetfulness of subscribing witnesses should not be permitted to destroy a will, whose execution has been sufficiently shown, though it has been lost, if there is other evidence upon the subject of its contents.

6. ———: ———: **What Testator Said: Distinction.** As to the quantum and quality of proof, a clear distinction is drawn between will contests and proof of lost wills. Where substantial evidence has been adduced to show the due execution of a will, that it has been lost, that it was not revoked and its contents, it is then admissible to prove in corroboration of other evidence what the testator himself said about it.

7. ———: **Proof of Contents.** The will was made in December, 1914, and delivered to testator's wife. She kept it three years, and then deposited it in a rented box in a bank, rented by her, used by her, and to which she alone carried the key. In 1921 the bank was robbed and the safety box was burglarized. Testator died in 1922. While it was in the personal care of the wife, at testator's house, a relative, a member of the family, but not a legatee, read it, saw

313 Mo. Sup.—17.

the testator's name and recognized his signature thereto, and saw and remembered the names of the two subscribing witnesses attached to it, and also remembered its contents, and this witness saw the same will deposited in the safety box. Afterwards the testator told him that his will was in the safety box at the bank. After his death the box was searched, but no will was found. At the time the will was made the testator had an only son, and by the will he gave him a tract of land and the residue of his property to his wife; this son died, and two or three days prior to his death testator told his family physician that his affairs were arranged, that he had a will and that his wife would get the property. One of the subscribing witnesses, who was also the scrivener, was dead at the time of the trial, and the other could not say with absolute certainty that he subscribed his name to the will. The probate court, upon the testimony of the witness who had read the will, admitted to probate a paper in which was set forth the will as such witness remembered it. *Held*, that all this evidence was competent, and was sufficiently substantial to support the judgment of the trial court adjudging that said paper was the will of said deceased.

Appeal and Error, 4 C. J., Section 2853, p. 876, n. 82. Evidence, 22 C. J., Section 1219, p. 973, n. 55; Section 1222, p. 976, n. 67. Wills, 40 Cyc., p. 1282, n. 8; p. 1295, n. 8, 13; p. 1297, n. 23; p. 1299, n. 30; p. 1303, n. 59, 60; p. 1361, n. 90.

Appeal from Lawrence Circuit Court.—*Hon. Charles L. Henson*, Judge.

AFFIRMED.

*J. M. McPherson, Rey V. McPherson* and *I. V. McPherson* for appellants.

(1) To establish a lost will it must first be shown that the will was duly signed and attested as required by law and that it was lost. There is absolutely no evidence in this case that Hiram P. Charles executed the alleged lost will dated, December, 1914, or that such a will was attested by two witnesses. R. S. 1919, sec. 507; Bensberg v. Washington University, 251 Mo. 641; Cowan v. Shaver, 197 Mo. 203; Knapp v. Trust Co., 199 Mo. 640. (2) It must first be shown that the alleged lost will was properly executed and attested before evidence of its contents is

admissible.   Mann v. Balfour, 187 Mo. 290; Schaaf v.
Peters, 111 Mo. App. 447; West v. West, 144 Mo. 119;
Hamilton v. Crowe, 175 Mo. 634.   (3)   A legatee is in-
competent to testify to the execution of a will.   The de-
fendant, May Belle Charles, was the wife and principal
legatee under the alleged lost will and was an incompet-
ent witness to testify to the execution of such alleged lost
will.   Mann v. Balfour, 187 Mo. 290.   (4)   The execution
and attestation of a will cannot be proved by the declara-
tions of the testator.   Walter v. Kendrick, 122 Mo. 518;
Bergman v. Kotm, 203 Mo. 701; Gordon v. Burris, 141
Mo. 613; Techenbrock v. McLaughlin, 209 Mo. 533.   (5)
Where no will is found among the papers of the deceased
the presumption is that if he had ever made a will the
same had subsequently been revoked.   There is no evi-
dence in this case that Hiram P. Charles made the alleged
will dated, December, 1914, but if he did make such will
the undisputed facts in this case show that he subsequent-
ly revoked the same.   Mann v. Balfour, 187 Mo. 290.

*Katherine Halterman* and *William B. Skinner* for
respondent.

(1)   The general rule of law is that if a record is
lost its contents may be shown by any secondary evidence,
when the case does not from its nature disclose the exist-
ence of other and better evidence.   Foulk v. Colburn, 48
Mo. 230.   (2)   If the best evidence possible cannot be
produced then the next best evidence should be admitted
and it is for the court to determine what is best and what
is secondary evidence of any fact which it is desired to
prove."   22 C. J. p. 973.   (3)   The rule of law which de-
mands the best evidence of the fact to be proven is qual-
ified to mean the best evidence available to the party pro-
ducing it.   Montgomery v. Dormer, 181 Mo. 5; Bosse v.
Weik, 144 Mo. App. 473.   (4)   If a will cannot be pro-
duced because it has been lost or destroyed by accident,
fraud or mistake, this does not destroy the legal effect of

the will, and where there is no copy of the instrument the contents of such will may be proved and the will established by the evidence of the subscribing witnesses or others who may have read it. Graham v. O'Fallon, 3 Mo. 507; Harrell v. Harrel, 284 Mo. 218. (5) The rule that in a contest over a will its terms cannot be varied or its validity affected by testimony tending to prove what the testator said about it, has no application and does not obtain in the trial of an action to establish a lost will of whose contents secondary evidence alone is obtainable. Mann v. Balfour, 187 Mo. 305. (6) It seems to be settled law that in the absence of a statute prescribing a different mode or requiring a higher degree of proof, a lost will may be established by the testimony of a single witness showing its execution and contents, though he claim under it and had himself destroyed it under a mistaken impression of its nature. And this is the rule where subscribing witnesses cannot be produced, though the statute requires the evidence of such witnesses at the probate. Schouler on Wills, pars. 402-3; 1 Underhill on Wills, p. 376, par. 276; Alexander's Commentaries on Wills, pars. 551, 1305, 1306, 1307; 3 Redfield on Law of Wills (3 Ed.) par. 15, p. 15; O'Fallon v. Mullanphy, 4 Mo. 601; Dickey v. Malechi, 6 Mo. 184; Wykoff v. Wykoff, 16 N. J. Eq. 401; Skaggs v. Horton, 82 Ala. 352; Apperson v. Dowdy, 1 S. E. 105; Johnson's Will, 40 Conn. 587; Davis v. Sagourney, 8 Mt. 486. (7) The presumption which arises if a will cannot be found after his death, which a testator made, that he destroyed it with the intention of revoking it, does not obtain where another person was the custodian of it. Schouler on Wills, par. 402. (8) The declarations of a testator made after the execution of his will are competent to prove the existence and contents of a lost will in corroboration of other evidence. 40 Cyc. 1314; Harrell v. Harrell, 284 Mo. 218; Mann v. Balfour, 187 Mo. 305; McMurtrey v. Kopke, 250 S. W. 399; 1 Underhill on Wills, sec. 277; 1 Jarmin on Wills (6 Am. Ed.) p. 159, note U; Williams v. Miles, 94 N. W. 705, 96 N. W. 151;

In re Miller's Will, 90 Pac. 1002.  (9)  Devisees under a will who are also heirs at law are competent witnesses to prove contents of a lost will.  Dickey v. Malechi, 6 Mo. 177; Harrell v. Harrell, supra.

GRAVES, J.—Proceeding to contest the last will and testament of Hiram P. Charles, a resident of Lawrence County, Missouri, who died in said county in February, 1922.  The original will was lost, and the will was probated by proof of what is called a copy, or at least a proof of the contents thereof.  The probate court of the county admitted the said last will to probate, and this action in the circuit court of the county seeks to have determined the fact as to whether or not the probated will was in fact the last will and testament of Hiram P. Charles.  The petition asked that an issue be framed thereon, which was done, and the cause tried before the court, without the intervention of a jury.  The trial court's judgment includes some findings of fact, and hence we quote it as follows:

"And now at this day this cause again coming on for hearing the parties having waived a jury and the court having heretofore heard the evidence and argument of counsel, and taken the case under advisement, until this day, and the court being fully advised in the premises finds the issue in favor of the defendant and that the facts set up and pleaded in her answer herein are true.

"The court finds that on the 22nd day of February, A. D. 1922, one Hiram P. Charles departed this life in Lawrence County, Missouri, testate, having theretofore in the month of December, 1914, duly executed his last will and testament; that said last will and testament of said deceased, Hiram P. Charles, was lost and could not be produced for probate, after the death of said deceased, and cannot be produced now; that said will of Hiram P. Charles, deceased, in contents, form and substance, is set forth in a paper and writing duly proved and admitted to probate in the Probate Court of Lawrence County, Mis-

souri, on the 16th day of March, 1922, and a copy of the same is attached to and made a part of the petition and answer herein, which paper the court finds from the evidence contains and embodies the last will and testament of Hiram P. Charles, deceased, in all its essential particulars, terms and provisions.

"It is therefore considered and adjudged by the court that on the 22nd day of February, 1922, Hiram P. Charles departed this life in Lawrence County, Missouri, testate, and it is hereby adjudged and declared that the last will and testament of said Hiram P. Charles, deceased, is in these words:

"'I, Hiram P. Charles, of the County of Lawrence and State of Missouri, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament.

"'First, I direct that all my just debts, including expenses of last illness and funeral, be paid out of my estate.

"'Second, I give, devise and bequeath to my son, J. Brice Charles, the west half of Lot Three of the Northeast quarter of Section Four, Township Twenty-nine, Range Twenty-eight, in Lawrence County, Missouri, to him, his heirs and assigns forever.

"'Third, to my beloved wife, May Belle Charles, I give, devise and bequeath all the balance and residue of my property, real, personal and mixed, of whatsoever nature and wheresoever situated, to her, her heirs and assigns forever.

"'Fourth, I nominate and appoint my beloved wife May Belle Charles, the executrix of this my last will and testament and direct that the Probate Court of Lawrence County, Missouri, grant to her letters testamentary without requiring her to give bond.

"'In witness whereof I have hereunto set my hand and seal this — day of December, 1914.

"'HIRAM P. CHARLES (Seal).

" 'Signed and declared by the above-named testator to be his last will and testament in the presence of us, who, at his request and in his presence and in the presence of each other have subscribed our names as witnesses thereto.

" 'THOS. E. SHRIVER.
" 'JOHN W. HOPPER.'

"And the same is hereby declared proved, authenticated, probated and forever established as the will of said Hiram P. Charles, deceased."

The deceased left no living children, and the plaintiffs herein are a brother and two sisters of deceased. The defendant is his wife as beneficiary under the will, and as executrix of the will. The case does not require an outline of the pleadings. It suffices to say that they were sufficient to raise the single issue involved in the case. No instructions or declarations of law were asked or given. The court heard the testimony and entered the judgment aforesaid from which the plaintiffs have appealed. The real question is, whether or not the deceased left a will, and whether the evidence suffices to show that fact. The findings of the trier of the facts are conclusive here, if there is any substantial evidence upon which to base them. Details are left to the opinion, as also are the divers contentions as to trial error.

I.   Contestants offered no evidence. The proponents (defendants) offered evidence tending to show that John W. Hopper was formerly probate judge of the county, but at the time of the alleged writing of the will (December, 1914) was a practicing lawyer, whose practice was largely with probate matters. Upon his regularly kept office-account book was a cash item of one dollar for writing a will for Hiram P. Charles. It was also shown that Charles delivered a will, witnessed by Thos. E. Shriver and John W. Hopper, to his wife, May Belle, and that she kept it personally for a while, and afterward put it in a rented box in the Bank of Miller, but the bank was robbed twice, and in the second robbery these boxes were robbed.

The box was rented by and solely used by Mrs. May Belle Charles. Upon the death of Mr. Charles, search was made, and no will could be found. This called for the proceeding in the probate court to probate a lost will. The evidence also shows that this couple were very devoted to each other, and that Mr. Charles had often said that he had willed his property to his wife. That he did not want his brother to get any of it. Two or three days before his death he told his family physician that he had his affairs arranged, and that his wife would get the property. At least this is the inference to be drawn from the talk at the time the physician asked him if he had his affairs arranged.

The insufficiency of the evidence to show the execution of the will is the primary point urged. To this may be added complaints about the admission of certain evidence.

John W. Hopper was dead, and his book of accounts was shown by his administrator. Mr. Shriver said that he had witnessed probably fifty wills written by Mr. Hopper, as their places of business were close, and that he thought that he witnessed this will, but would not be absolutely certain without the will itself, and a chance to see his signature thereto. All the circumstances detailed by him tend strongly to show that he signed the will. This in addition to the evidence that the instrument at the Charles home, and later in the bank, was shown to have borne the signature of Hiram P. Charles, and what purported to be the signatures of Thos. E. Shriver and John W. Hopper. This evidence by one who saw and read the instrument at the Charles home, and who was not a beneficiary therein, although a relative, living with the Charles family. The complaints of plaintiffs, contestants, we take next.

II. The whole case was tried upon the theory that testator was competent to make a will in 1914. Plaintiffs' learned counsel make but five points in their "points and authorities" and all these center largely

around the single question, as to whether or not deceased, in fact, left a will. The one point discussed in appellant's brief under the head of Argument, is as above stated. The question is approached from several angles, including the alleged competency of some testimony.

We take first the proof as to the contents of the will. In this matter if there was substantial evidence upon which the trier of the facts could find the fact as to the contents, this court is bound by such findings, in this legal action. There is one witness who says that he read the will, and recognized the testator's signature thereto. He gives the details as to the contents, and there is nothing in the record to discredit this witness. The trial court believed him, and established the will as detailed by him. By this finding of fact we are bound. This is not a case in equity, where we try the case *de novo* here. This is the least of the contentions, and we dispose of it by a process of elimination, as we have eliminated the mental capacity to make a will. The latter on the theory that the whole trend of the trial was an admission of mental capacity. The question is no where raised. The only real question is the sufficiency of the proof as to the due execution of the will. That we take next.

III. The vital point in the case is as to the proof of the due execution of the will. That the husband in December, 1914, turned over to the wife a will, or a purported will, of the character described by the young man living with them, and who read it in 1917, is not subject to serious controversy. The admissions of deceased are to this effect. Even when the doctor asked if he had attended to his business affairs, he stated as much. This was two or three days before his death and Charles said he had a will and his property would go to his wife. There is but little doubt that the wife placed the document in a safety box, and that it was lost in 1921, when the bank was robbed for the second time in 1921. In other words there is ample evidence from which the trier of the facts could well find that there was a purported will

signed by testator and witnessed by two witnesses. Further, that such instrument was lost or destroyed by and through the burglary of the wife's safety deposit box in the bank. The court, as the trier of the facts, found these things, and by such findings we are bound.

There were other proven admissions of the deceased that he had made a will in the interest of the wife, and that John W. Hopper and Thomas E. Shriver, were the witnesses thereto. This is exclusive of the testimony of the wife. There is also the testimony of Shriver that he thought he signed this particular will, but could not say for certain, because he had perhaps signed fifty or more wills at the instance of Judge Hopper. If all this evidence is competent, it is sufficient to show the due execution of the will. This because the whole testimony shows that it related to the one instrument delivered to the wife in December, 1914. That Judge Hopper wrote such an instrument is made clear by his book of accounts. It was quite natural for him to sign as one of the two witnesses. He was not interested further than the one dollar which he received for writing it. It is a usual thing for the scrivener to sign as one of the witnesses. The competency of the evidence only remains for disposition.

IV. With the will gone, and one witness dead, proof of its execution by the witnesses thereto was difficult. Shriver, the living witness, was not as positive as he might have been, had he been able to see and read the will. The witness does say that he remembers that Mr. Charles came in and introduced himself to him.

Koontz, the young man who lived with them not only testified to reading the will, but testified that the copy established by the probate court was a true copy of the will he read, and this copy had upon it the name of the two witnesses, Hopper and Shriver. He further testified as to being present when the wife rented the safety box at the Bank of Miller, and saw her put the will in that box. Further he said that afterward, Mr. Charles told

him that his will was in that safety box in the Bank of Miller. By other evidence it is also shown that Mrs. Charles rented the box for herself, and got the key thereto, and that this box was burglarized in 1921, as we have stated, supra.

The question is, not whether this lost instrument has been established by the best evidence, but whether or not it has been established by the best evidence procurable under the peculiar situation. [Foulk v. Colburn, 48 Mo. 225; Graham v. O'Fallon, 3 Mo. l. c. 511; Harrell v. Harrell, 284 Mo. 1 .c. 233; 22 C. J. 973.]

"The rule of law that demands of a party the best evidence of a fact to be proven is qualified to mean that the party must produce the best evidence available to him." [Montgomery v. Dormer, 181 Mo. l. c. 15.]

Again the usual rule is, where it is shown that another person was in the custody of the will, then there is no presumption that the lost or missing will was destroyed by testator for the purpose of revoking it. [28 R. C. L. p. 385; Schultz v. Schultz, 35 N. Y. 653.]

The death or forgetfulness of subscribing witnesses should not be permitted to destroy a will, if there is other evidence upon the subject. [Harrell v. Harrell, 284 Mo. l. c. 233-4, and cases therein cited.] It should be noted that this case was written by Judge Goode. It is labeled as a case in Division Two. This is error, because Judge Goode never sat in Division Two.

A clear distinction has been drawn between mere will contests (as to the *quantum* and quality of proof) and proof of lost wills. Thus in Mann v. Balfour, 187 Mo. l. c. 305, it is said:

"It is insisted that the testimony of Mrs. Goodwin repeating what the testatrix said in reference to the making and recording of the will and of its contents was incompetent. It has been held by this court that in a contest over a will, the terms cannot be varied or its validity affected by testimony tending to prove what the testator said about it after its execution. [Walton v.

Kendrick, 122 Mo. 54; Schierbaum v. Schemme, 157 Mo.
1.] But those were not cases of a lost will, of whose con-
tents secondary evidence alone is obtainable. Where sub-
stantial evidence has been adduced to show the due ex-
ecution of the will, that it has been lost, that it was not
revoked, and its contents, it is then admissible to prove
in corroboration of the other evidence what the testator
himself said about it. [1 Underhill on Law of Wills, sec.
277; 1 Jarman on Wills (6 Am. Ed.) p. 159, note U; South-
worth v. Adams, 11 Biss. 256; In re Lambie's Estate, 97
Mich. 49; Conoly v. Gayle, 61 Ala. 116; McDonald v. Mc-
Donald, 142 Ind. 55; In re Valentie's Will, 93 Wis. 45.]
There was no error in admitting Mrs. Goodwin's testi-
mony.''

On the whole we believe that the contents of this lost
will were sufficiently proven by the best obtainable evi-
dence, and that the judgment of the circuit court should
be affirmed. It is so ordered. All concur.